## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |
| MARYLYNN HARTSEL and DEANNA PARKER, derivatively on behalf of Nominal Defendants, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Case No. 1:13-cv-01128-SLR |
| THE VANGUARD GROUP INC., JOHN J. BRENNAN, CHARLES D. ELLIS, RAJIV L. GUPTA, AMY GUTMANN, JOANN HEFFERNAN HEISEN, ANDRE F. PEROLD, ALFRED M. RANKIN, JR., and J. LAWRENCE WILSON; ACADIAN ASSET MANAGEMENT, LLC, and MARATHON ASSET MANAGEMENT, LLP, | : : : : : : : : : : : | |
| Defendants, and | : : | |
| VANGUARD INTERNATIONAL EQUITY INDEX FUNDS, d/b/a VANGUARD EUROPEAN STOCK INDEX FUND, and VANGUARD HORIZON FUNDS, d/b/a VANGUARD GLOBAL EQUITY FUND, | : : : : : : | |
| Nominal Defendants. | : : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

OF COUNSEL:
Penny Shane
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Tel: (202) 956-7500

Donald J. Wolfe, Jr. (I.D. No. 285)
Brian C. Ralston (I.D. No. 3770)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor, P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000

*Attorneys for the Trustee Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, Joann Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson*

William M. Lafferty (#2755)
Bradley D. Sorrels (#5233)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE  19801
Tel:  (302) 658-9200

*Attorneys for Defendant The Vanguard Group, Inc.*

Lewis H. Lazarus (#2374)
Peter B. Ladig (#3513)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
Tel:  (302) 888-6800

*Attorneys for Nominal Defendants Vanguard
International Equity Index Funds, d/b/a Vanguard
European Stock Index Fund and Vanguard Horizon
Funds, d/b/a Vanguard Global Equity Fund*

OF COUNSEL:

Brandon F. White
Michael Licker
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA  02210
Tel:  (617) 832-1170

*Attorneys for Defendant Acadian Asset
Management LLC*

Samuel A. Nolen (#971)
Susan M. Hannigan (#5342)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Tel:  (302) 651-7700

*Attorneys for Defendants Acadian Asset Management
LLC and Marathon Asset Management, LLP*

# TABLE OF CONTENTS

**Page(s)**

STATEMENT AND NATURE OF THE PROCEEDINGS ........................................................1

STATEMENT OF FACTS........................................................................................................4

     A.     Plaintiffs' Allegations Regarding the Funds' "Unlawful Investments"..................4

     B.     Plaintiffs' Prior Litigations Concerning the Same Conduct....................................5

     C.     Plaintiffs' Belated Demand on the Board of Trustees ............................................7

     D.     The Current Action .................................................................................................7

ARGUMENT ..........................................................................................................................8

I.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS............8

     A.     The Court Lacks Diversity Jurisdiction. .................................................................9

     B.     The Court Lacks Federal Question Jurisdiction. ....................................................9

     C.     The Court Lacks Jurisdiction Under 28 U.S.C. § 1337 and Lacks Supplemental Jurisdiction. .................................................................................11

II.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD FACTS DEMONSTRATING THAT THE NEW BOARD'S DEMAND REFUSAL WAS WRONGFUL. ........................................................12

     A.     Plaintiffs Do Not Even Attempt to Allege That They Satisfied the Prerequisites to Making a Demand. .....................................................................12

     B.     Even If Plaintiffs' Demand Was Proper, the Complaint Does Not Adequately Allege That It Was Wrongfully Refused. ...........................................13

           1.     Plaintiffs Fail to Allege Any Facts Undermining the New Board's Independence........................................................................14

           2.     Plaintiffs Fail to Allege Facts That Cast Doubt on the New Board's Good Faith. ...............................................................................15

           3.     Plaintiffs Fail to Adequately Allege That the New Board's Investigation Was Unreasonable.......................................................18

## TABLE OF CONTENTS
### (continued)

Page(s)

III.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS
       FAIL TO STATE COGNIZABLE DERIVATIVE CLAIMS. ....................................19

    A.   Plaintiffs' Claims Are Time Barred. ....................................................................19

    B.   Counts I and II of the Amended Complaint Fail to State a Claim. ......................21

        1.   Plaintiffs' Breach-of-Duty Claims Fail Because Plaintiffs Do Not
            Adequately Allege That Owning Publicly Traded Stock Was
            Illegal. ................................................................................................21

        2.   Plaintiffs' Breach-of-Duty Claims Fails Because Plaintiffs Do Not
            Adequately Allege Facts Necessary to Challenge Investment
            Decisions. ............................................................................................23

        3.   Plaintiffs' Breach-of-Duty Claims Against the Trustees Are Barred
            by the Funds' Declarations of Trust. ...................................................24

    C.   Count III of the Amended Complaint Fails to State a Claim Because It
       Does Not Adequately Allege Waste. ...................................................................28

    D.   Count IV of the Amended Complaint Fails to State a Claim Because it
       Does Not Adequately Allege a Breach of Contract. ............................................29

CONCLUSION ....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahalon Precision Manufacturing Corp.* v. *Flair International Corp.*,
    796 N.Y.S.2d 171 (N.Y. App. Div. 2005) ...........................................................................29

*American International Group, Inc.* v. *Greenberg*,
    965 A.2d 763 (Del. Ch. 2009) ...............................................................................................25

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................19

*Benihana of Tokyo, Inc.* v. *Benihana, Inc.*,
    891 A.2d 150 (Del. Ch. 2005) ...............................................................................................26

*Bennett* v. *Southwest Airlines Co.*,
    484 F.3d 907 (7th Cir. 2007) ......................................................................................... 10, 11

*Boeing Co.* v. *Shrontz*,
    1994 WL 30542 (Del. Ch. Jan. 19, 1994) ........................................................................ 16, 18

*Brambles USA, Inc.* v. *Blocker*,
    731 F. Supp. 643 (D. Del. 1990) ...........................................................................................13

*Brehm* v. *Eisner*,
    746 A.2d at 263 .......................................................................................................................28

*Burks* v. *Lasker*,
    441 U.S. 471 (1979) ...............................................................................................................27

*Cargill, Inc.* v. *JWH Special Circumstance LLC*,
    959 A.2d 1096 (Del. Ch. 2008) ......................................................................................... 3, 24

*Charal Investment Co.* v. *Rockefeller*,
    1995 WL 684869 (Del. Ch. Nov. 7, 1995) ...........................................................................16

*Copeland* v. *Lane*,
    2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) ......................................................................17

*Diceon Electronics, Inc.* v. *Calvary Partners, L.P.*,
    772 F. Supp. 859 (D. Del. 1991) .............................................................................................5

*Dole Food Co.* v. *Patrickson*,
    538 U.S. 468 (2003) ...............................................................................................................22

*Dresser Industries, Inc.* v. *Underwriters at Lloyd's of London*,
    106 F.3d 494 (3d Cir. 1997) ....................................................................................................9

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Empire Healthchoice Assurance, Inc.* v. *McVeigh,*
  547 U.S. 677 (2006) ...................................................................................9, 10

*FLI Deep Marine LLC* v. *McKim,*
  2009 WL 1204363 (Del. Ch. Apr. 21, 2009) .......................................................13

*Gamoran* v. *Neuberger Berman, LLC,*
  2012 WL 2148217 (S.D.N.Y. June 12, 2012) ............................................... 16, 17

*Gaspero* v. *Douglas,*
  1981 WL 10228 (Del. Super. Ct. Nov. 6, 1981) .................................................20

*Gatz* v. *Ponsoldt,*
  297 F. Supp. 2d 719 (D. Del. 2003) ..................................................................9

*Giles* v. *Rodolico,*
  140 A.2d 263 (Del. 1958) ..............................................................................20

*Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing,*
  545 U.S. 308 (2005) .......................................................................... 9, 10, 11

*Grimes* v. *Donald,*
  673 A.2d 1207 (Del. 1996) ........................................................................14, 19

*Hartsel* v. *The Vanguard Group, Inc.,*
  133 S. Ct. 32 (2012) .....................................................................................7

*Hartsel* v. *The Vanguard Group, Inc.,*
  2011 WL 2421003 (Del. Ch. June 15, 2011) ...............................................*passim*

*Hartsel* v. *The Vanguard Group, Inc.,*
  38 A.3d 1254, 1254 (Del. 2012) ............................................................ 6, 15, 26

*Heller* v. *Kiernan,*
  2002 WL 385545 (Del. Ch. Feb. 27, 2002) .......................................................21

*Horizon Personal Communications, Inc.* v. *Sprint Corp.,*
  2006 WL 2337592 (Del. Ch. Aug. 4, 2006)29*In re Citigroup Inc. Shareholder Derivative Litigation,*
  964 A.2d 106 (Del. Ch. 2009).....................................................................26, 27

*In re Lear Corp. Shareholder Litigation,*
  967 A.2d 640 (Del. Ch. 2008)..........................................................................25

*In re Regions Morgan Keegan Securities, Derivative, & ERISA Litigation,*
  2013 WL 2404063 (W.D. Tenn. May 31, 2013)...................................................11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Walt Disney Co. Derivative Litigation,*
906 A.2d 27 (Del. 2006).................................................................25

*Jarecki* v. *G. D. Searle & Co.,*
367 U.S. 303 (1961) .....................................................................22

*Kalick* v. *Northwest Airlines Corp.,*
372 Fed. App'x 317 (3d Cir. 2010)..................................................9

*Sung ex rel. Lazard Ltd.* v. *Wasserstein,*
415 F. Supp. 2d 393 (S.D. N.Y. 2006) ...........................................11

*Levine* v. *Smith,*
591 A.2d 194 (Del. 1991).........................................................*passim*

*Malpiede* v. *Townson,*
780 A.2d 1075 (Del. 2001)............................................................25

*McBrearty* v. *The Vanguard Group, Inc.,*
130 S. Ct. 3411 (2010) ...................................................................6

*McBrearty* v. *The Vanguard Group, Inc.,*
2009 WL 875220 (S.D.N.Y. Apr. 2, 2009) ..................................6, 9

*Merrell Dow Pharmaceuticals Inc.* v. *Thompson,*
478 U.S. 804 (1986) .....................................................................11

*Nakahara* v. *NS 1991 American Trust,*
739 A.2d 770 (Del. Ch. 1998)........................................................24

*O'Donnell* v. *Nixon Uniform Service, Inc.,*
2003 WL 21203291 (Del. Super. Ct. May 20, 2003)......................20

*Parlin* v. *Dyncorp International, Inc.,*
579 F. Supp. 2d 629 (D. Del. 2008) ..............................................10

*Penn State Construction Co.* v. *Associated-E. Mortgage Co.,*
457 F. Supp. 396 (W.D. Pa. 1978)................................................12

*Rales* v. *Blasband,*
634 A.2d 927 (Del. 1993)..............................................................18

*Reid* v. *Siniscalchi,*
2008 WL 821535 (Del. Ch. Mar. 27, 2008) ..................................20

*Ross* v. *Bernhard,*
396 U.S. 531 (1970).......................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Russell* v. *K-mart,*
761 A.2d 1 (Del. 2000) ............................................................................................ 21

*Ryan* v. *Gifford,*
918 A.2d 341 (Del. Ch. 2007) ................................................................................ 19

*Saminsky* v. *Abbott,*
185 A.2d 765 (Del. Ch. 1961) ................................................................................ 28

*Scattered Corp.* v. *Chicago Stock Exchange, Inc.,*
1996 WL 417507 (Del. Ch. July 12, 1996) .......................................................... 16

*Scattered Corp.* v. *Chicago Stock Exch.,*
701 A.2d 70 (Del. 1997) .................................................................................. 15, 18

*Spiegel* v. *Buntrock,*
571 A.2d 767 (Del. 1990) .......................................................................... 2, 13, 14

*Stone* v. *Ritter,*
911 A.2d 362 (Del. 2006) ....................................................................................... 28

*United Housing Foundation, Inc.* v. *Forman,*
421 U.S. 837 (1975) ............................................................................................... 22

*West Coast Management & Capital, LLC* v. *Carrier Access Corp.,*
914 A.2d 636 (Del. Ch. 2006) .......................................................................... 14, 26

*White* v. *Panic,*
783 A.2d 543 (Del. 2001) ....................................................................................... 28

*Wood* v. *Baum,*
953 A.2d 136 (Del. 2008) ....................................................................................... 25

*Yancoskie* v. *Delaware River Port Authority,*
528 F.2d 722 (3d Cir. 1975) .................................................................................. 12

*Zupnick* v. *Goizueta,*
698 A.2d 384 (Del. Ch. 1997) ................................................................................ 28

**Statutes, Rules, and Regulations**

18 U.S.C. § 1955 ......................................................................................... *passim*

18 U.S.C. § 1962 ......................................................................................... *passim*

28 U.S.C. § 1331 ............................................................................................. 9, 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

28 U.S.C. § 1332.................................................................................................9, 12

28 U.S.C. § 1337.................................................................................................2, 12

28 U.S.C. § 1367......................................................................................................12

8 Del. C. § 220.........................................................................................................18

10 Del. C. § 8106..........................................................................................3, 16, 19

10 Del. C. § 8112......................................................................................................19

10 Del. C. § 8118......................................................................................................20

12 Del. C. § 3302.................................................................................................3, 23

12 Del. C. § 3806......................................................................................................24

12 Del. C. § 3816......................................................................................................12

12 Del. C. § 3825......................................................................................................24

Federal Rule of Civil Procedure 12(b)(6).................................................1, 17, 18

Federal Rule of Civil Procedure 23.1.......................................................1, 13, 19

## Other Authorities

H.R. Rep. No. 91-1549, at 21 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007 ...........................23

Commission Guidance Regarding the Duties and Responsibilities of Investment Company
    Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, SEC
    Release No. 28345, 93 S.E.C. 2469 (July 30, 2008)............................................27

1 Edward P. Welch *et al.*, Folk on the Delaware General Corporation Law § 141.2.13
    (5th ed. 2006)..................................................................................................29

2 *McLaughlin on Class Actions* § 9:11 (10th ed.) ....................................................16

Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson, current and former Trustees ("Trustees") of nominal defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund (the "European Index Fund" and the "Global Equity Fund," respectively, and collectively the "Funds"), with The Vanguard Group, Inc. ("Vanguard"), Acadian Asset Management, LLC ("Acadian"), Marathon Asset Management, LLP ("Marathon"), and the Funds, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Verified Derivative Complaint (the "Amended Complaint") pursuant to Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT AND NATURE OF THE PROCEEDINGS

Over the past six years, in two distinct court systems and through appeals ending with two denials of *certiorari* by the United States Supreme Court, it has been conclusively established that Plaintiffs' attacks on Defendants and the legality of the investment choices at issue are meritless.  Plaintiffs now bring their third derivative lawsuit, alleging, again, Trustee and investment advisor liability for the Funds' purchases of publicly traded stock in four overseas companies with online gambling operations that served U.S. customers.  The Amended Complaint, just like the pleadings in prior cases, rests on the unsupported legal conclusion that, because these overseas companies allegedly violated the federal anti-gambling statute, 18 U.S.C. § 1955,  purchasing their stock violated that statute's prohibition against "own[ing]" a gambling business.[1]  (*E.g.*, Am. Compl. ¶¶ 12, 58.)

---

[1] Though it references the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c), (d), the Amended Complaint does not purport to bring a claim under RICO.

In the wake of Plaintiffs' prior unsuccessful lawsuits, Plaintiffs demanded that the Funds' current board of trustees (the "New Board") pursue this action on the Funds' behalf. Based on the results of an investigation, by way of an independent demand committee, the New Board refused. Plaintiffs' disregard for the protection to which this refusal is entitled under the business judgment rule, and Plaintiffs' baseless legal conclusion that the Funds' stock purchases were criminal, are just two of the many flaws that compel dismissal of the Amended Complaint.

*First*, this Court lacks subject matter jurisdiction over this matter because the parties are not diverse; Plaintiffs' state law claims do not give rise to a necessary or substantial federal issue; and there is no basis for jurisdiction pursuant to 28 U.S.C. § 1337 or supplemental jurisdiction.

*Second*, Plaintiffs have not adequately pled that the New Board wrongfully refused to pursue this action, a necessary prerequisite to a derivative action. As a matter of law, the refusal could not have been wrongful because Plaintiffs never satisfied the prerequisites for shareholder demands against the Funds. Furthermore, Plaintiffs waived the potential argument that the New Board could not fairly evaluate a demand. *See Spiegel* v. *Buntrock*, 571 A.2d 767, 775 (Del. 1990). Plaintiffs also failed to plead with particularity facts that create a reasonable doubt that the New Board conducted a reasonable investigation of the demand, much less a reasonable doubt about the New Board's good faith consideration of the demand. *See Levine* v. *Smith*, 591 A.2d 194, 211-12 (Del. 1991), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244, 254 (Del. 2000).

*Third*, the Amended Complaint fails to state any claims upon which relief can be granted. Fundamentally, the Amended Complaint does not adequately allege that passive ownership of shares in an overseas gambling company traded on the open market violates federal

anti-gambling laws.  Plaintiffs also do not meet the statutory requirements for alleging fiduciary liability for an investment decision in light of the composition of each portfolio, its investment purposes, and the consistency of the stock purchases at issue with those purposes.  *See* 12 Del. C. § 3302(a), (c).  Indeed, the composition and purpose of the Funds underscore the frivolous nature of the claims, considering that one of the Funds tracked a stock index that included overseas gambling businesses.  With respect to the Trustees, as the Delaware Statutory Trust Act permits, *Cargill, Inc.* v. *JWH Special Circumstance LLC*, 959 A.2d 1096, 1111-13 (Del. Ch. 2008), the Funds' Declarations of Trust bar Plaintiffs' claims for negligence, while allowing claims for breach of fiduciary duty only where, unlike here, pleaded facts plausibly establish willful misfeasance, bad faith, gross negligence or reckless disregard.  Plaintiffs' conclusory, legally baseless or otherwise insufficient assertions fall far short of these standards.

*Finally*, Plaintiffs bring their claims a full two years after the applicable limitations period has expired.  *See* 10 Del. C. § 8106.

Fundamentally, Plaintiffs ask the Court to conclude that the Trustees and investment advisors were negligent or breached their duties because they did not affirmatively act to divest the Funds of investments in foreign gambling companies despite the fact that: (i) no legislature, court or enforcement authority has asserted that passively owning publicly traded shares in foreign gambling companies is illegal under the federal anti-gambling statute, and (ii) at least with respect to European Index Fund, the objective is to track the performance of a benchmark index, an index that included the overseas gambling companies.  Defendants hereby ask the Court to put an end to Plaintiffs' incessant attempts to pursue Defendants on a baseless theory.

## STATEMENT OF FACTS

The Funds are statutory trusts organized under Delaware law, and the Trustees were members of each of their respective Boards of Trustees between April 1, 2006 and May 1 2008. (Am. Compl. ¶¶ 24, 26, 45, 87.)  Vanguard served as an investment advisor to both Funds (Am. Compl. ¶¶ 39-40), and Acadian and Marathon served as investment advisors to Global Equity Fund.  (Am. Compl. ¶¶ 50-51.)  Plaintiffs Hartsel and Parker are each a shareholder in one of the Funds.  Hartsel purchased shares in Global Equity Fund on February 13, 2006 (Am. Compl. ¶ 20), and Parker purchased shares in European Index Fund on or about May 20, 2005 (Am. Compl. ¶ 22).

### A.   Plaintiffs' Allegations Regarding the Funds' "Unlawful Investments"

The crux of the Amended Complaint is that Defendants "caused" or "allowed" the Funds to purchase publicly traded stock in overseas gambling companies and that these open market securities purchases violated the federal prohibition related to illegal gambling, 18 U.S.C. § 1955, and RICO, 18 U.S.C. § 1962 (c), (d).  Plaintiffs allege that those purchases therefore constituted breaches of fiduciary duty, negligence and corporate waste.  (Am. Compl. ¶¶ 1, 4, 8, 14, 16, 17, 45.)  Specifically, Plaintiffs allege that, from April 1, 2006 through May 1, 2008, Defendants "caused" the Funds to purchase stock in "four illegal off-shore Internet gambling businesses," Sportingbet, PartyGaming, Bwin and NETeller, the shares of which traded on the London and Austrian Stock Exchanges.  (Am. Compl. ¶¶ 4, 67-70, 86-106, 121.)[2]  Based on

---

[2] Plaintiffs allege that European Index Fund purchased 3,018,542 shares of PartyGaming (Am. Compl. ¶ 90), 1,015,722 shares of Sportingbet (Am. Compl. ¶ 96) and 70,600 shares of Bwin (Am. Compl. ¶ 100).  Plaintiffs allege that Global Equity Fund purchased 607,500 shares of PartyGaming (Am. Compl. ¶ 101), 68,624 shares of Sportingbet (Am. Compl. ¶ 104) and 64,859 shares of NETeller 68,624 (Am. Compl. ¶ 107). These holdings represented less than 0.26 percent of the outstanding shares of these companies as of May 1, 2008, the date of the last purchase alleged by Plaintiffs. *See* June 6, 2014 Declaration of Brian C. Ralston ¶¶ 2-5 and

allegations that these businesses were "illegal gambling businesses" under § 1955 (*see* Am. Compl. ¶¶ 73-78, 80-86, 108-17), Plaintiffs assert that passive investment in the businesses' publicly traded stock violated the federal prohibition against "own[ing]" an illegal gambling company, 18 U.S.C. § 1955, and therefore violated RICO, 18 U.S.C. § 1962 (c), (d).  (*See* Am. Compl. ¶¶ 11, 56, 57, 64, 156, 161, 162, 181, 182.)  According to the Amended Complaint, Defendants either "knew, or were reckless in not knowing" that the gambling companies' operations were illegal under U.S. law (Am. Compl. ¶ 72), and this allegedly informed Defendants that investing in those companies' publicly traded stock was also illegal (Am. Compl. ¶¶ 159-60)—*although the Amended Complaint contains no allegations that any enforcement authority anywhere has taken this position*.

Plaintiffs contend that, in response to increased U.S. enforcement against overseas gambling operations themselves beginning in July 2006, overseas gambling businesses exited the U.S. market, causing their stock prices to decline, which, in turn, caused investors in the Funds to suffer losses.  (Am. Compl. ¶¶ 6, 89, 124-26.)  Notably, Plaintiffs do not allege that their overall investments in the Funds suffered any losses; the theory appears to be that each Plaintiff's profitable investment in a Fund could have been more profitable had the Funds made a different investment decision with respect to these particular stocks.  (Am. Compl. ¶¶ 126, 129.)

B.     **Plaintiffs' Prior Litigations Concerning the Same Conduct**

This action is Plaintiffs' third attempt to litigate these claims.  Plaintiffs first brought suit on August 29, 2008 in the Southern District of New York, alleging a violation of

---

Exhibits 1-4 thereto ("Ralston Ex.").  Publicly filed documents such as Exhibits 1-10 of the June 6, 2014 Declaration of Brian C. Ralston are judicially noticeable.  *Diceon Electronics, Inc*. v. *Calvary Partners, L.P*., 772 F. Supp. 859, 861 (D. Del. 1991); *Pension Ben. Guar. Corp.* v. *White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir. 1993).

RICO and other derivative and class claims under Delaware law. *McBrearty* v. *The Vanguard Group, Inc.*, 2009 WL 875220, at *1 (S.D.N.Y. Apr. 2, 2009). On April 2, 2009, Judge Denise Cote dismissed the RICO claim, finding that proximate causation had not been alleged because, based on the complaint, it was the U.S. government's crackdown on overseas gambling companies that proximately caused Plaintiffs' asserted injury, not Defendants' purchases of the shares at issue. *See id*. at *3. Judge Cote declined to exercise supplemental jurisdiction over the state law claims, and the case was dismissed. *Id*. The Second Circuit affirmed, *McBrearty* v. *The Vanguard Group, Inc*., 353 Fed. Appx. 640, 642 (2d Cir. 2009), and the U.S. Supreme Court denied *certiorari* on June 14, 2010, *McBrearty* v. *The Vanguard Group, Inc*., 130 S. Ct. 3411 (2010).

Nearly a year following the Second Circuit's decision in *McBrearty* (but before *certiorari* was denied), on April 7, 2010, Plaintiffs initiated a second action against Defendants, this time in the Delaware Court of Chancery, alleging derivative and class state law claims based on identical conduct. Plaintiffs brought suit without first making a demand on the Board of Trustees, which they argued would have been futile. The Court of Chancery dismissed the action with prejudice on June 15, 2011 for failure to adequately allege demand futility and for failure to allege cognizable claims on behalf of a class. *Hartsel* v. *The Vanguard Group, Inc*., 2011 WL 2421003, at *28 (Del. Ch. June 15, 2011) ("*Hartsel*"). Vice Chancellor Donald F. Parsons found the Trustees were independent within the meaning of the Delaware Statutory Trust Act and the federal Investment Company Act, and did not face a substantial likelihood of liability arising from the alleged activity. *Id*. at *23, *26-27. Plaintiffs appealed that decision to the Delaware Supreme Court, which affirmed the Court of Chancery's ruling. *Hartsel* v. *The Vanguard Group, Inc*., 38 A.3d 1254, 1254 (Del. 2012) (Table). Plaintiffs sought review from

the U.S. Supreme Court, and again their *certiorari* petition was denied.  *Hartsel* v. *The Vanguard Group, Inc.*, 133 S. Ct. 32, 32 (2012).

### C.    Plaintiffs' Belated Demand on the Board of Trustees

On July 25, 2012, nearly four years after first bringing suit, Plaintiffs made a demand on the New Board to pursue the causes of action at bar against Defendants.  (Am. Compl. ¶¶ 144 (a)-(b).)[3]  On October 18, 2012, the New Board appointed a committee (the "Committee"), consisting of three members of the New Board who are not Defendants, to investigate Plaintiffs' demand and to recommend a disposition.  (Am. Compl. ¶ 144 (c).) Plaintiffs filed this lawsuit on June 24, 2013, and on July 17, 2013, the Committee issued its report, which recommended that the New Board reject Plaintiffs' demand.  (Am. Compl. ¶ 144(h).)  The New Board adopted the Committee's recommendation.  (Am. Compl. ¶ 144(h).)

### D.    The Current Action

Plaintiffs purport to assert their claims derivatively on behalf of the Funds.  (Am. Compl. ¶¶ 169, 174, 179, 188.)  In Counts I and II, Plaintiffs claim that Defendants breached fiduciary duties to the Funds and to the Funds' shareholders and acted negligently by "causing" the Funds to purchase stock in illegal gambling businesses.  (Am. Compl. ¶¶ 168-72, 173-77.)  In Count III, Plaintiffs claim that Defendants' use of Fund assets to purchase shares of illegal gambling businesses constituted corporate waste.  (Am. Compl. ¶¶ 178-82.)  In Count IV, Plaintiffs bring a claim only against the investment advisors to the Funds, claiming that they breached their respective contracts by "causing" the Funds to own shares in illegal gambling business "contrary" to federal and state law.  (Am. Compl. ¶¶ 185-88.)

---

[3] The New Board is  comprised of eleven members, only five of whom are named as Defendants in this action.  (*Compare* Ralston Exs. 5-8 *with* Am. Comp. ¶ 47.)

Plaintiffs allege that they may pursue derivative claims on behalf of the Funds because the New Board's refusal of their demand was wrongful.  That is, Plaintiffs allege that (i) the Committee was comprised of "non-independent 'insiders'"; (ii) the New Board appointed the Committee more than two months after Plaintiffs' demand and "intentionally allowed the statute of limitations to expire" on June 25, 2013 before issuing a report on July 17, 2013; (iii) the New Board reserved "final decision-making authority" for itself; (iv) the New Board and the Committee rejected offers of "assistance" by Plaintiffs and conducted the investigation "without the transparency the law requires"; and (v) the New Board did not provide the Committee's report to Plaintiffs.  (Am. Compl. ¶¶ 144-47.)  According to the Amended Complaint, by this course of action, the New Board and Committee "abdicated any authority to terminate this litigation by refusing Plaintiffs' litigation demand" and demonstrated a lack of independence, good faith and due care.  (Am. Comp. ¶¶ 144(j), (k).)  In addition, Plaintiffs allege that members of the New Board have "an irreconcilable conflict of interest" because they sit on the boards of all funds in the Vanguard family of mutual funds and on the board of those funds' investment manager, Vanguard.  (Am. Comp. ¶¶ 148-49.)   As in the prior actions, Plaintiffs argue that this overlapping board membership, as well as board members' receipt of compensation for board service and their investments in various Vanguard funds, compromises their independence.  (Am. Comp. ¶¶ 148-152.)

## ARGUMENT

### I.   Plaintiffs' Complaint Should Be Dismissed Because the Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.

This Court should dismiss the Complaint because none of the four bases of subject matter jurisdiction that Plaintiffs assert has merit.  (*See* Am. Compl. ¶ 18.)

### A.    The Court Lacks Diversity Jurisdiction.

Plaintiffs' assertion that there is complete diversity of the parties under 28 U.S.C. § 1332 ignores that, in a derivative suit, where the "corporation is . . . the real party in interest, the stock holder [is] at best the nominal plaintiff." *Gatz* v. *Ponsoldt*, 297 F. Supp. 2d 719, 733 (D. Del. 2003) (quoting *Ross v. Bernhard,* 396 U.S. 531, 538–39 (1970)). The real parties in interest here, the Funds, *see id.*, maintain their principal places of business in Pennsylvania (Am. Compl. ¶¶ 24, 26), as does Defendant Vanguard, which is also incorporated under Pennsylvania law (Am. Compl. ¶ 37). Because the real parties in interest are citizens of the same state as a defendant, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332 (c) (corporations are deemed citizens of the state of their incorporation and principal place of business); *Dresser Indus., Inc.* v. *Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3d Cir. 1997) (28 U.S.C. § 1332 requires complete diversity between all plaintiffs and defendants).

### B.    The Court Lacks Federal Question Jurisdiction.

There also is no federal question jurisdiction here. Plaintiffs attempted to assert federal claims in the Southern District of New York action, but those claims were dismissed with prejudice. *McBrearty*, 2009 WL 875220, at *3. As a result, the Amended Complaint asserts only state law claims. To be a basis for jurisdiction under 28 U.S.C. § 1331, those state law claims must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). That standard is not satisfied here.

The category of cases where a state law claim invokes federal jurisdiction is "special and small." *Empire Healthchoice Assurance, Inc.* v. *McVeigh,* 547 U.S. 677, 700 (2006); *see also Kalick* v. *Northwest Airlines Corp.*, 372 Fed. App'x 317, 320 (3d Cir. 2010)

(only a "slim category" of state law claims invoke federal jurisdiction); *Parlin* v. *Dyncorp Int'l, Inc.*, 579 F. Supp. 2d 629, 633 (D. Del. 2008) (federal jurisdiction over state law claims raising federal issues arises only in "rare instances").  For example, in *Empire*, though the case involved state law claims by an insurance company to recover money for a health plan created pursuant to the Federal Employees Health Benefits Act of 1959 and administered by a federal agency, *Empire*, 547 U.S. at 682-83, 700-01, there was no federal question jurisdiction because the lawsuit was not triggered by the action of a federal agency, nor was the relevant dispute a "pure issue of law"; rather, it was "fact-bound and situation-specific." *Id*. at 681.  In contrast, in *Grable*, the Supreme Court held that a quiet title action invoked federal question jurisdiction, 545 U.S. at 314, because the federal issue was the only contested issue, was dispositive of the case and would be controlling in others, and "centered on the action of a federal agency (IRS) and its compatibility with a federal statute."  *Empire*, 547 U.S. at 700; *see also Bennett* v. *Southwest Airlines Co.*, 484 F.3d 907, 909-10 (7th Cir. 2007) (state quiet title action in *Grable* "amounted to a collateral attack" on the IRS's seizure of land).

Here, unlike in *Grable*, Plaintiffs' claims do not require examination of a federal agency's action.  Instead, as in *Empire*, they involve "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Bennett*, 484 F.3d at 910 (federal jurisdiction not invoked by air-crash tort claims, notwithstanding that important issues of federal law may arise).  Non-federal law issues, such as determinations regarding the Trustees' and investment advisers' obligations under Delaware law, their state of mind, and the amount of potential damages, would predominate here. *See id.*

A federal forum is also not appropriate for the dispute because of the disruption that a finding of federal jurisdiction would have on the "state-federal line drawn (or at least

assumed) by Congress." *Grable*, 545 U.S. at 314. *Grable* warns of the "enormous shift of traditionally state cases into federal courts" that would follow "a general rule of exercising federal jurisdiction over state claims resting on . . . [federal] statutory violations." *Grable*, 545 U.S. at 319 (discussing *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804 (1986)). Important to the Supreme Court's ruling in *Grable* was the fact that few quiet-title actions would present federal issues, and thus finding in favor of jurisdiction would not move a whole category of litigation from state to federal court. *Bennett*, 484 F.3d at 911 (distinguishing *Grable* from air-crash tort litigation, which frequently gives rise to issues of federal law). To invoke federal jurisdiction here, by contrast, would invite a massive shift from state to federal court of derivative lawsuits whose state-law causes of action are based in part on alleged violations of federal law—something courts have refused to do. *See, e.g., Sung ex rel. Lazard Ltd.* v. *Wasserstein*, 415 F. Supp. 2d 393, 395–406 (S.D.N.Y. 2006) (no federal jurisdiction over state-law derivative action claiming breach of fiduciary duty based on an alleged violations of federal securities laws); *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, 2013 WL 2404063, at *4 (W.D. Tenn. May 31, 2013) (no federal jurisdiction over state-law derivative action despite "the federal laws referenced in the Complaint [that] provide[d] standards against which to measure Defendants' conduct and [were] part of the proof of the elements of the state law claims").

### C.   The Court Lacks Jurisdiction Under 28 U.S.C. § 1337 and Lacks Supplemental Jurisdiction.

Jurisdiction under 28 U.S.C. § 1337 is clearly improper. Section 1337 establishes federal court jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce." *Id.* "The existence of jurisdiction based on [28 U.S.C. § 1337] is determined by the same standard as federal question jurisdiction,"

*Penn State Const. Co.* v. *Associated-E. Mortg. Co.*, 457 F. Supp. 396, 398 (W.D. Pa. 1978);

*Yancoskie* v. *Delaware River Port Authority*, 528 F.2d 722, 725 (3d Cir. 1975) (same).  Because,

as explained above, the Amended Complaint fails to allege federal question jurisdiction,

jurisdiction also cannot be based on § 1337.  (Am. Comp. ¶¶ 168-188.)

Finally, because Plaintiffs allege no basis for original jurisdiction under 28 U.S.C.

§§ 1331, 1332 or 1337, Plaintiffs cannot invoke supplemental jurisdiction.  28 U.S.C. § 1367(a)

(requiring original jurisdiction to assert supplemental jurisdiction).

## II.   Plaintiffs' Complaint Should Be Dismissed Because Plaintiffs Fail to Plead Facts Demonstrating That the New Board's Demand Refusal Was Wrongful.

### A.   Plaintiffs Do Not Even Attempt to Allege That They Satisfied the Prerequisites to Making a Demand.

As an initial matter, the New Board's refusal cannot be wrongful because

Plaintiffs failed to satisfy the requirements set forth in the Funds' Declarations of Trust for

making a demand.  Those Declarations required that (i) holders of at least 10% of the

outstanding shares of the Funds join in Plaintiffs' demand and (ii) Plaintiffs execute an

undertaking "to reimburse the Trust for the expense of [counsel and other advisors hired in

consideration of a Demand] in the event that the Trustees determine not to bring such an action."

(Ralston Exs. 9-10, Art. VIII, § 10(b)-(c).)  The Delaware Trust Act permits funds to impose

such "additional standards and restrictions" before a beneficial owner may bring a derivative

action, explicitly "including, without limitation, the requirement that beneficial owners owning a

specified beneficial interest in the statutory trust join in the bringing of the derivative action."

*See* 12 *Del. C.* § 3816(e).  Accordingly, Delaware courts regularly enforce such limitations on

the right to sue.  *See Hartsel*, 2011 WL 2421003, at *21 ("The DSTA is enabling in nature and,

as such, permits a trust through its declarations of trust to delineate additional standards and

requirements with which a stockholder-plaintiff must comply to proceed derivatively in the name of the trust.").

Neither prerequisite to suit was satisfied here, and the Complaint does not allege otherwise. The fact that the New Board investigated and rejected Plaintiffs' demand does not excuse Plaintiffs' failure to comply with the standing requirements in the Declarations of Trust. Put another way, a board's decision to undertake an investigation following receipt of a demand by a shareholder who lacks standing to make it does not grant that shareholder standing to pursue derivative claims on behalf of the entity. *See Brambles USA, Inc.* v. *Blocker*, 731 F. Supp. 643, 648, 652 (D. Del. 1990).

**B.     Even If Plaintiffs' Demand Was Proper, the Complaint Does Not Adequately Allege That It Was Wrongfully Refused.**

"[W]here a demand on a board has been made and refused, [courts] apply the business judgment rule in reviewing the board's refusal," which requires the "presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Spiegel*, 571 A.2d at 774 (citation omitted). It is Plaintiffs' burden to plead facts that create reasonable doubt about whether the New Board's decision is protected by the business judgment rule by pleading with particularity that the New Board was not independent, that it did not conduct a reasonable investigation of the demand, or that it failed to act in good faith. *See* Fed. R. Civ. P. 23.1; *Levine*, 591 A.2d at 212-13; *FLI Deep Marine LLC* v. *McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009). Because the Amended Complaint lacks *any* allegations that give rise to such reasonable doubt—let alone *particularized* facts—it should be dismissed.

1.     **Plaintiffs Fail to Allege Any Facts Undermining the New Board's Independence.**

a.     **Plaintiffs Have Conceded That the New Board Is Disinterested.**

By making a demand on a board, a plaintiff "tacitly concedes the independence of a majority of the board." *Spiegel*, 571 A.2d at 777; *see also Grimes* v. *Donald*, 673 A.2d 1207, 1219 (Del. 1996) (waiver of challenge to board's independence is "analogous to res judicata"), *overruled on other grounds by Brehm*, 746 A.2d at 254.  Therefore, Plaintiffs have waived any argument that the refusal was wrongful because the New Board was conflicted due to its members' positions on Vanguard boards, investments in Vanguard funds, and purported potential liability.  (Am. Compl. ¶¶ 149-153.)

b.     **Plaintiffs Are Collaterally Estopped From Challenging the New Board's and the Committee's Independence.**

Even if the New Board's independence was subject to question in this case (it is not), Plaintiffs would be collaterally estopped by the Delaware Supreme Court's decision in *Hartsel* from challenging that independence.  Collateral estoppel bars relitigation of an issue that: (i) is the same as that involved in a prior action; (ii) was actually litigated; (iii) was determined by a final and valid judgment; and (iv) whose determination was essential to the prior judgment. *W. Coast Mgmt. & Capital, LLC* v. *Carrier Access Corp.*, 914 A.2d 636, 643 (Del. Ch. 2006).  Each of these elements is satisfied here.  In this action and in the Delaware Chancery Court, Plaintiffs asserted that the Trustees' positions as members of the boards of each Vanguard fund, as well as of Vanguard, created "irreconcilable conflicts" rendering them unable to consider a demand.  (*Compare* Am. Compl. ¶¶ 148-151 *with* Ralston Ex. 12 at ¶¶ 147-148, 151.)  The Delaware Chancery Court found that these allegations failed to "cast reasonable doubt on the independence or disinterestedness" of the Trustees, dismissing the case with prejudice "because" of that finding. *Hartsel*, 2011 WL 2421003, at *23-24.  The Delaware Supreme Court affirmed

"on the basis of and for the reasons set forth in [the Chancery Court's] well-reasoned decision." *Hartsel*, 38 A.3d at 1254.  Not only did the Delaware Court of Chancery and Supreme Court correctly decide the law, but as a procedural matter, their decisions cannot now be relitigated.

The Amended Complaint's allegations that members of the Committee lacked independence (*see* Am. Compl. ¶¶ 144(c), 148-153) are also insufficient to overcome the presumption that the decision of the New Board to accept the Committee's recommendation is protected by the business judgment rule.  Plaintiffs challenge the Committee's independence on the same basis that Plaintiffs allege bias for members of the New Board generally: because Committee members served on multiple boards of the Vanguard funds and on the board of Vanguard.  (Am. Compl. ¶¶ 149-153.)  As with their attempt to reargue the independence of the New Board, Plaintiffs are collaterally estopped from relitigating the independence of three of its members based on arguments already considered and rejected in Plaintiffs' prior action.  *See Hartsel*, 2011 WL 2421003, at *21-24.

> **2.     Plaintiffs Fail to Allege Facts That Cast Doubt on the New Board's Good Faith.**

The Trustees are presumed to have acted in good faith.  *Scattered Corp.* v. *Chicago Stock Exch.*, 701 A.2d 70, 74 (Del. 1997) *overruled on other grounds by Brehm*, 746 A.2d at 254.  To rebut this presumption, Plaintiffs must raise a reasonable doubt that the Trustees failed to act "in the best interest of the corporation."  *Levine*, 591 A.2d at 198.  No such doubt has been raised by Plaintiffs' Amended Complaint.

> **a.     The Timing of the New Board's Response to Plaintiffs' Demand Does Not Support an Allegation of Bad Faith.**

Bad faith may not be inferred from the fact that the limitations period that Plaintiffs assert is applicable to their claims expired before the New Board refused the demand. (Am. Compl.  ¶ 144-147.)  Boards are entitled to a reasonable amount of time to investigate a

demand, and "'the amount of time needed for a response will vary in direct proportion to the

complexity of the technological, quantitative, and legal issues raised by the demand.'" *Charal*

*Inv. Co.* v. *Rockefeller,* 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995) (citation omitted).  In

*Gamoran* v. *Neuberger Berman*, *LLC*,  2012 WL 2148217 (S.D.N.Y. June 12, 2012), for

example, where the plaintiff alleged conduct similar to that at issue here, the defendants also

allegedly delayed responding to the demand until after the limitations period ran.  *Id.* at *3-4.

The *Gamoran* court concluded that "the novelty and complexity of the issues in [the] case" were

such that the time it took the board to render a decision on the demand did not give rise to an

inference of bad faith.  *Id.* at *6.

      The issues that the New Board faced here were no less complex, and the New

Board reached a decision within a year, in slightly less time than did the board in *Gamoran*.  *Id.*

at *2, *5.  Plaintiffs' complaint that the New Board wrongfully delayed a decision on the demand

is particularly unpersuasive because Plaintiffs themselves "chose a perilously late date to make a

demand on the board," *id.* at *6, waiting for a full month out of the one-year period that Plaintiffs

assert they had to refile their suit after the Supreme Court denied their *certiorari* petition.  *See* 10

*Del. C.* § 8106; (Am. Compl. ¶ 144(a), (b)).

      **b.**    **The New Board's Reservation of Authority to Respond to the
Demand Does Not Support an Allegation of Bad Faith.**

      The New Board's reservation of final decision-making authority also does not

suggest bad faith.  *See*, *e.g.*, *Scattered Corp.* v. *Chicago Stock Exch., Inc.,* 1996 WL 417507, at

*4 (Del. Ch. July 12, 1996), *aff'd* 701 A.2d 70 (Del. 1997), *overruled on other grounds by*

*Brehm*, 746 A.2d at 254.  To the contrary, it is common practice for a board to respond to a

demand based on the results of a committee investigation.  *See*, *e.g.*,  *Boeing Co.* v. *Shrontz*,

1994 WL 30542, at *2 (Del. Ch. Jan. 19, 1994); *see also* 2 *McLaughlin on Class Actions* § 9:11

(10th ed.) (a board may "form a special committee . . . to investigate, review and evaluate the facts and circumstances asserted in the demand and to . . . recommend to the board" a response) (collecting cases).

Consistent with this common practice, the Funds' Declarations of Trust delegate to the board of each Fund the right to consult a committee or other advisors when considering the merits of shareholder demands.  (*See* Ralston Exs. 9-10, Art. VIII, § 10 (c).)  The New Board's exercise of a right that is established by the Declarations of Trust and consistent with common practice under governing law does not demonstrate an absence of good faith.  *Cf. Copeland* v. *Lane*, 2012 WL 4845636, at *6 (N.D. Cal. Oct. 10, 2012) (applying Delaware law) ("[T]he fact that the Board chose to appoint an Independent Committee to conduct the investigation is not inconsistent with the Board's fiduciary duties.").

### c.    The New Board's Alleged Refusal to Permit Plaintiffs to Participate in the Investigation Does Not Support an Allegation of Bad Faith.

Plaintiffs wrongly allege that the New Board acted in bad faith by not allowing them "any access" to or ability to "assist or participate" in the Committee's investigation, as well as by wrongfully considering the demand "without the transparency that the law requires."  (Am. Compl. ¶¶ 145-46.)  Even accepting the facts in these allegations as true for purposes of this motion, Fed. R. Civ. P. 12(b)(6), there is no requirement that a special committee must invite participation when responding to a demand.  *See Levine*, 591 A.2d at 214.  In particular, it is well-established that requiring a board to entertain plaintiff participation would constitute an "unwarranted intrusion" on a board's authority to manage corporate affairs.  *Id.*; *see also Copeland*, 2012 WL 4845636, at *6 (rejecting plaintiffs' claim that the board wrongfully "did not include Plaintiff in its investigation"); *Gamoran*, 2012 WL 2148217 at *5 (investigating committee is under no obligation to "continuously inform plaintiff" of its investigation).

> **d.  The New Board's Alleged Failure to Disclose the Committee Report Does Not Support an Allegation of Bad Faith.**

Plaintiffs' allegation that the New Board acted in bad faith by not providing them with the Committee's report mischaracterizes the New Board's legal obligations.  (Am. Compl. ¶ 147.)  Again accepting the facts in this allegation as true for this motion, Fed. R. Civ. P. 12(b)(6), Plaintiffs are not entitled to any discovery to assist them with their pleadings, *see Levine*, 591 A.2d at 208-10, nor does the New Board have any duty to disclose the Committee's report to Plaintiffs.  To the contrary, Delaware courts have rejected a "limited discovery" requirement for such committee reports, and, as a result, the refusal of a board to provide the report to plaintiffs does not "evidence wrongful refusal of demand."  *Boeing*, 1994 WL 30542, at *4.  Indeed, in *Boeing*, the board's refusal to disclose to derivative plaintiffs even "the composition of, and recommendations made by, the special committee," did not adequately allege doubt about the board's good faith.  *Id*. at *2, *4.  In any event, Section 220 of the General Corporation Law of Delaware, 8 *Del. C.* § 220, provided Plaintiffs with a mechanism for obtaining the report, but Plaintiffs have not sought that remedy, choosing instead to bootstrap their inaction into an allegation of bad faith in the midst of their various other meritless complaints.  *See Rales* v. *Blasband*, 634 A.2d 927, 934 n.10 (Del. 1993); *Scattered Corp.*, 701 A.2d at 79 (defendant properly refused to provide discovery to plaintiff because plaintiff "cannot argue that they have used the available 'tools at hand' to obtain the necessary information before filing a derivative action").

> **3.  Plaintiffs Fail to Adequately Allege That the New Board's Investigation Was Unreasonable.**

To the extent that the allegations discussed above can be construed to assert that the New Board's investigation was unreasonable, they contain *no* facts whatsoever, much less *particularized* facts, to support that claim.  *See Levine*, 591 A.2d at 213 (board investigations are

presumptively reasonable absent allegations that the board did not "act[] on an informed basis in rejecting" the demand).  Instead, Plaintiffs allege in conclusory terms that the New Board failed to respond to their demand with "due care."  (Am. Compl. ¶ 144 (k).)  "[S]uch conclusory, *ipse dixit*, assertions are inconsistent with the requirements of Chancery Rule 23.1." *Grimes*, 673 A.2d 1207, 1220 (Del. 1996).

### III.  Plaintiffs' Complaint Should Be Dismissed Because Plaintiffs Fail to State Cognizable Derivative Claims.

Pleadings must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  Plaintiffs' claims are not plausible because the Amended Complaint is bereft of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Instead, the Trustees' liability was explicitly limited by the Declarations of Trust, and Plaintiffs have failed to plead facts that, when accepted as true, give rise to reasonable inferences of any Defendant's liability.

### A.  Plaintiffs' Claims Are Time Barred.

This lawsuit concerns investments made six to eight years ago.  The latest the limitations period began was May 1, 2008, when the Funds purportedly made the last of the stock purchases at issue.  (Am. Compl. ¶¶ 87, 97); *see Ryan* v. *Gifford,* 918 A.2d 341, 359 (Del. Ch. 2007) ("[t]he statute of limitations begins to run at the time the alleged harmful act is committed").  Applying Delaware's three-year statute of limitations for breach of fiduciary duty, negligence, waste and breach of contract claims, 10 *Del. C.* § 8106 (breach of fiduciary duty, negligence, and breach of contract); 10 *Del. C.* § 8112 (waste), Plaintiffs' claims expired by April 30, 2011—more than two years before they filed this action on June 25, 2013.

The Delaware Savings Statute, 10 *Del. C.* § 8118(a), cited in Plaintiffs' April 17, 2014 Status Report (Dkt. 9) does not rescue claims previously dismissed in *Hartsel*. Section 8118(a) applies to claims that have been previously dismissed, *inter alia*, "for any matter of form." *Id.* Section 8118 has thus saved claims dismissed for deficiencies in venue, jurisdiction or service. *See Reid* v. *Siniscalchi*, 2008 WL 821535, at *5-*7 (Del. Ch. Mar. 27, 2008), *rev'd on other grounds sub nom*. *Reid* v. *Spazio*, 970 A.2d 176 (Del. 2009). These applications of § 8118 reflect that the purpose of the Savings Statute is "to mitigate against the harshness of the defense of the statute of limitations against a plaintiff who, *through no fault of his own*, finds his case technically barred by lapse of time." *Gaspero* v. *Douglas*, 1981 WL 10228, at *1 (Del. Super. Ct. Nov. 6, 1981) (quoting *Giles* v. *Rodolico*, 140 A.2d 263, 267 (Del. 1958)) (emphasis added).

This statute has not, however, been construed to save claims dismissed, as were those here, because of Plaintiffs' conscious attempt to circumvent the demand process, an attempt which was "dismissed with prejudice." *Hartsel*, 2011 WL 2421003, at *28. Dismissals with prejudice "generally signif[y] that the court intended to dismiss the action on the merits, that is, to bring the action to a final conclusion against the plaintiff." *O'Donnell* v. *Nixon Uniform Service, Inc.*, 2003 WL 21203291, at *3 (Del. Super. Ct. May 20, 2003), *aff'd sub nom*. *O'Donnell* v. *Lilly*, 836 A.2d 514 (Del. 2003) (quotations omitted). In such circumstances, "the 'savings' statute does not apply." *Id.* Plaintiffs had their day in court, and their claims cannot be revived by recasting the prior dismissal as a "matter of form."

Furthermore, the Delaware Savings Statute only allows a plaintiff to file a new suit for "the same cause[s] of action" that were previously filed. 10 *Del. C.* § 8118(a). This is the first time Plaintiffs have asserted a breach of contract cause of action; thus, whether or not the

Savings Statute applies to the action as a whole (it does not), the statute cannot save Plaintiffs'

time-barred breach of contract claim.  *Id.*

## B.      Counts I and II of the Amended Complaint Fail to State a Claim.

### 1.      Plaintiffs' Breach-of-Duty Claims Fail Because Plaintiffs Do Not Adequately Allege That Owning Publicly Traded Stock Was Illegal.

The crux of the Amended Complaint is that, by making allegedly "unlawful

investments" in overseas gambling companies (Am. Compl. ¶ 129), Defendants  breached their

fiduciary duties of care and loyalty (Am. Compl. ¶¶ 130, 132).  Plaintiffs style this claim in

Count I as a breach of fiduciary duty claim and in Count II as a separate count of "negligence"

(which merely restates the duty of care claim asserted in Count I).  No matter what the claim is

called, it should be dismissed because the Amended Complaint does not allege that Defendants

have breached any duty.  *See Heller* v. *Kiernan,* 2002 WL 385545, at *3 (Del. Ch. Feb. 27,

2002) (elements of breach of fiduciary duty claim), *aff'd,* 806 A.2d 164 (Del. 2002); *Russell* v.

*K-mart*, 761 A.2d 1, 5 (Del. 2000) (elements of negligence claim).

In particular, Plaintiffs fail to state a breach-of-duty claim because they do not

plausibly allege that purchasing shares of publicly traded stocks on foreign exchanges violated

any law.  There is no support for Plaintiffs' assertion that passive investment in an overseas

gambling company violates § 1955.  (*See* Am. Compl. ¶¶ 156-61.)  To the contrary, the plain

language of § 1955 refutes any such conclusion.

Section 1955 makes it illegal to "conduct[], finance[], manage[], supervise[],

direct[], or own[] all or part of" an  illegal gambling business.  18 U.S.C. § 1955(a).  It is clear

from the language of § 1955 that "own[]" does not refer, in context, to minority investments in

publicly traded companies.  "[T]he words 'own' and 'ownership' . . . are not technical terms or

terms of art but common terms, the precise legal meaning of which depends upon the statutory

context in which they appear." *Dole Food Co.* v. *Patrickson*, 538 U.S. 468, 481 (2003) (Breyer, J., concurring in part and dissenting in part). In particular, "[t]he maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki* v. *G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).

The activities Congress chose to proscribe—conducting, financing, managing, supervising, and directing, 18 U.S.C. § 1955—denote influence over, responsibility for, or participation in the gambling operation itself, and "owning" should be read in the same sense. The statutory context of "owning" in § 1955 demonstrates that Congress did *not* intend it to include minority investors in public securities. Such investors do not, and indeed cannot, participate in the operation of the businesses in which they invest. Rather, to qualify as a security, the arrangement must "involve[] an investment of money in a common enterprise with profits to come solely from the efforts of others." *United Housing Found., Inc.* v. *Forman*, 421 U.S. 837, 852 (1975) (quotation omitted). Black's Law Dictionary, for example, distinguishes between "ownership" and "beneficial ownership," defining "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." Black's Law Dictionary (9th ed. 2009). "Beneficial ownership," on the other hand, is a "corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner." *Id.* Beneficial owners—investors—are not "owners" in the ordinary sense.

The legislative history supports this conclusion. Congress intended § 1955 to reach "only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern, and those corrupt

state and local officials who make it possible for them to function." H.R. Rep. No. 91-1549, at

21 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029. Plaintiffs have not alleged that

Defendants "prey systematically upon our citizens" or are assisted by corrupt officials to invest

in securities. Any such assertions would be frivolous and likewise susceptible to a motion to

dismiss.

Furthermore, no court has ever construed the statute to reach shareholders of a

publicly traded gambling business, and Plaintiffs have not identified any court, enforcement

action, or even media report in the 40-year history of § 1955 to suggest that such conduct is

illegal. Vice Chancellor Parsons even commented, without deciding the issue, that he was "not

convinced" that passive investment could violate § 1955. *Hartsel*, 2011 WL 2421003, at *25.

The Court should reject Plaintiffs' attempt to conflate the legality of the overseas gambling

businesses with the legality of passive investment in the publicly traded stock of those

businesses.

**2.      Plaintiffs' Breach-of-Duty Claims Fail Because Plaintiffs Do Not
         Adequately Allege Facts Necessary to Challenge Investment Decisions.**

In order to proceed with their claims against Defendants concerning the

"propriety of an investment decision," Plaintiffs must allege that the investment was improper in

light of "what [Defendants] knew or should have known at the time of the decision about . . .

[t]he inherent nature and expected performance of the investment portfolio," the "purposes" of

the trust, and other attributes of the portfolio. 12 *Del. C.* § 3302(a), (c). The Amended

Complaint fails to plead any facts about the Funds' portfolios or objectives between 2006 and

2008, much less facts demonstrating that the stock purchases at issue were inconsistent with the

Funds' objectives in light of their overall portfolios. (*See* Am. Compl. ¶ 24-35.) The breach-of-

duty claims should be dismissed on this basis alone.

With regard to European Index Fund's investments, the Amended Complaint's silence about its nature and purpose is surely not an accident.  An index fund is a "mutual fund that invests in the stock of companies constituting a specific market index, such as Standard & Poor's 500 stocks, and thereby tracks the stock average."  Black's Law Dictionary (9th ed. 2009) (defining "index fund").  The Amended Complaint does not allege that European Index Fund deviated from the investments composing the index it tracked, nor does anything else suggest that the stock purchases at issue deviated in any way from that purpose.  Defendants cannot be subjected to litigation for not deviating from holdings in an index that the Fund was established to track.

### 3. Plaintiffs' Breach-of-Duty Claims Against the Trustees Are Barred by the Funds' Declarations of Trust.

The Delaware Statutory Trust Act explicitly exempts a trustee from liability for any action taken in good faith reliance upon the provisions of the trust's governing instrument, which may provide for the "limitation" or even the "*elimination* of any and all liabilities for . . . breach of duties (including fiduciary duties) of a trustee" in the absence of demonstrable bad faith.  12 *Del. C.* § 3806(e) (emphasis added); *Cargill, Inc.* v. *JWH Special Circumstance LLC*, 959 A.2d 1096, 1111-13 (Del. Ch. 2008) (Delaware Statutory Trust Act "contemplate[s] the preexistence of fiduciary duties and potential liabilities for breaching those duties that may be modified by the governing instrument").  Delaware trust law gives "maximum effect to the enforceability of governing instruments," including provisions limiting liability.  12 *Del. C.* § 3825(b); *Nakahara* v. *NS 1991 American Trust*, 739 A.2d 770, 783-84 (Del. Ch. 1998) ("Clearly, the Legislature intended to provide Delaware business trusts . . . wide latitude in the drafting of their governing instruments.").

### a.   The Declarations of Trust Only Permit Claims Alleging Intentional or Reckless Wrongdoing.

Here, the Funds' Declarations of Trust bar claims against Trustees in the absence

of "*willful misfeasance, bad faith, gross negligence or reckless disregard* of the duties involved

in the conduct of the office of Trustee."[4]  (Ralston Exs. 9-10, Art. VII, § 3 (emphasis added).)  In

the analogous corporate law context, Delaware courts have held that shareholder complaints

asserting violations of fiduciary duty akin to those asserted here must be dismissed where barred

by exculpatory provisions such as these.  *See Malpiede* v. *Townson*, 780 A.2d 1075, 1093-94

(Del. 2001); *Am. Int'l Group, Inc.* v. *Greenberg*, 965 A.2d 763, 795 & n.113 (Del. Ch. 2009)

(Strine, V.C.) ("For the life of me, I do not understand why the parties dueled over . . . a due care

claim . . . [where] the certificate of incorporation . . . insulates [the] directors from liability.").

The standards that apply to Plaintiffs' allegations in light of the exculpatory

provisions are clear:

- Willful misfeasance refers to acts done with scienter, that is "'actual or constructive knowledge' that [the] conduct was legally improper." *Wood* v. *Baum*, 953 A.2d 136, 141 (Del. 2008) (citation omitted).

- Bad faith requires a showing that the fiduciary (i) "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation," (ii)"act[ed] with the intent to violate applicable positive law," or (iii) "intentionally fail[ed] to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64, 66-67 (Del. 2006).

- Gross negligence, the definition of which is "extremely stringent" under Delaware law, *In re Lear Corp. Sh. Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008), refers to "reckless indifference to or a deliberate disregard of the whole body of

---

[4] The securities purchases at issue here fall squarely within the scope of the Trustees' duties. (*See* Ralston Ex. 9, Art. IV, § 3(a) (authorizing Trustees to "invest in . . . all types of securities . . . including . . . all types of . . . stocks . . . issued . . . by any corporation or organization organized under any foreign law"); Ex. 10, Art. II. (the "purpose" of the Funds is to "invest[] . . . in securities").)

stockholders or actions which are without the bounds of reason," *Benihana of Tokyo, Inc.* v. *Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005) (citation and quotations omitted), *aff'd*, 906 A.2d 114 (Del. 2006).

Plaintiffs do not come close to alleging facts that satisfy any of these standards.

> **b.     Plaintiffs Do Not Allege Intentional or Reckless Illegal Acts by the Trustees.**

Aside from the fact that, as set forth above, the Amended Complaint fails to adequately allege that the passive, minority investments at issue *actually* violated § 1955, there is not a single fact to suggest that the Trustees knew or were reckless in not knowing of such purported illegality.  Plaintiffs' theory that enforcement actions and media reports concerning the illegality of overseas gambling businesses' U.S. operations were "red flags" that put the Trustees on notice of the illegality of open-market investments in such companies is meritless.  (Am. Compl. ¶ 160-61.)  Even if that information could have served to "red flag" the illegality of the gambling businesses' U.S. operations, Plaintiffs allege no suggestion by anyone that the Funds' investments were illegal.  *See In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 128 (Del. Ch. 2009) ("red flags" of "worsening conditions in the . . . market" were insufficient to allege that the board was "presented with 'red flags' alerting it to potential misconduct at the Company") (quotations omitted).

In any event, Plaintiffs made the same assertions concerning "red flags" in the *Hartsel* case, and Vice Chancellor Parsons rejected them:  "[T]o the extent that Plaintiffs argue the media reports and other news of prosecutions and the like under § 1955 in the mid–2000s constituted red flags that the Trustees ignored, I disagree." *Hartsel*, 2011 WL 2421003, at *26. Because the Delaware Supreme Court affirmed "on the basis of and for the reasons set forth in" the Court of Chancery's decision, *Hartsel*, 38 A.3d at 1254, Plaintiffs are collaterally estopped from reasserting the same argument.  *See W. Coast Mgmt. & Capital, LLC*, 914 A.2d at 634.

c.      **Plaintiffs Do Not Allege an Intentional Failure to Adequately Monitor the Funds.**

Plaintiffs likewise do not sufficiently plead an intentional failure to act in the face of a known duty to act.  Plaintiffs misconstrue the concept that trustees are "watchdogs," arguing that they are therefore responsible for individual purchases and sales of stocks by the Funds. (Am. Compl. ¶ 155.)  This is incorrect.  The SEC has explained that the role of mutual fund independent directors in "monitoring" is simply part of their duty to "oversee[] the use of fund assets and in monitoring the conflicts of interest faced by a fund's investment adviser," and "directors are not required or expected to monitor each trade" made by the mutual fund's investment adviser.  Commission Guidance Regarding the Duties and Responsibilities of Investment Company Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, SEC Release No. 28345, 93 S.E.C. 2469, 2471, 2473 (July 30, 2008); *see also Burks* v. *Lasker*, 441 U.S. 471, 484-85 (1979) (Congress intended to exclude from the Investment Company Act a requirement that trustees exercise "direct controls").

Plaintiffs' allegations that the Trustees failed to ensure "proper control mechanisms" and "monitoring processes," as well as to evaluate the performance of the asset managers (Am. Compl. ¶¶ 156-58, 162), are also meritless, as Plaintiffs have not pled facts, even if taken as true, that are sufficient to demonstrate that the Trustees "utterly failed to implement any reporting or information system or controls" over the Funds' investment decisions or "consciously failed" to use the oversight system in place.  *See Citigroup*, 964 A.2d at 122 (citations omitted).  Rather, Plaintiffs' allegations compel the contrary conclusion:  the Trustees hired professional investment advisers to manage the Funds, delegated "managerial or operational oversight" duties to them, received "regular reports from portfolio managers and other investment personnel concerning the Vanguard Fund's investments," and evaluated the

-27-

"portfolio management process and performance."  (Am. Compl. ¶¶ 50-51, 158-59.)  These

actions are consistent with fulfilling oversight duties, not abandoning them.  *See, e.g.*, *Stone* v.

*Ritter*, 911 A.2d 362, 372-73 (Del. 2006) (crediting the board for "exercis[ing] oversight by

relying on periodic reports" from independent consultant and monitoring compliance).

      **C.**      **Count III of the Amended Complaint Fails to State a Claim Because It Does Not Adequately Allege Waste.**

      To state a claim for corporate waste, a plaintiff must allege that Defendants

"irrationally squander[ed] corporate assets—for example, where the challenged transaction

served no corporate purpose or where the corporation received no consideration at all."  *White* v.

*Panic*, 783 A.2d 543, 554 n.36 (Del. 2001) (quotations omitted) ([W]aste is '"an exchange of

corporate assets for consideration so disproportionately small as to lie beyond the range at which

any reasonable person might be willing to trade."').[5]  "That is an extreme test, very rarely

satisfied by a shareholder plaintiff, because if under the circumstances any reasonable person

might conclude that the deal made sense, then the judicial inquiry ends."  *Zupnick* v. *Goizueta*,

698 A.2d 384, 387 (Del. Ch. 1997) (quotations omitted); *see also Brehm*, 746 A.2d at 263 (waste

is an exchange "so one sided that no business person of ordinary, sound judgment could

conclude that the corporation has received adequate consideration") (citation omitted).

      The Amended Complaint does not allege that the Funds "received no

consideration at all" for their investments, *White*, 783 A.2d at 554, or even that they paid too

much.  Instead, the Amended Complaint makes clear that, upon purchase, the securities had

value, and even after the price drops caused by U.S. enforcement activity, the securities still

---

[5] Corporate waste principles apply to statutory trusts.  *See Saminsky* v. *Abbott*, 185 A.2d 765, 771 (Del. Ch. 1961).

retained value.  (*See* Am. Compl. ¶¶ 118-123.)  Delaware law does not permit plaintiffs to

challenge allegedly unprofitable investments as "waste."[6]

### D.   Count IV of the Amended Complaint Fails to State a Claim Because it Does Not Adequately Allege a Breach of Contract.

Plaintiffs' breach of contract claims fail because the alleged breach, "causing" the

Funds "to own shares in illegal gambling businesses contrary to numerous federal and state

criminal laws," relies on the same faulty theory discussed above—that the stock purchases at

issue violated criminal law.  (*See* Am. Compl. ¶187.)  Moreover, an investment manager in an

index fund such as European Index Fund, the objective of which is to track the performance of a

benchmark index, is expected to invest the fund's assets in a manner consistent with that

objective.  Plaintiffs thus seek to impose contradictory contractual obligations on the investment

advisors, something Delaware law "strives to avoid."  *See Horizon Pers. Commc'ns, Inc.* v.

*Sprint Corp.*, 2006 WL 2337592, at *21 (Del. Ch. Aug. 4, 2006).

In addition to claiming that the investment advisors breached their contracts to

comply with all "applicable laws and regulations" by violating the federal anti-gambling statute

and RICO, Plaintiffs base their breach of contract claim on alleged violations of Article 225 of

the New York Penal Law and "the legal principle that it is wrongful to seek to profit from the

wrongdoing of others."  (Am. Compl. ¶ 187.)  Those claims fail for the same reasons that claims

concerning federal law fail:  the Amended Complaint includes no allegations adequate to support

---

[6] Independently, Plaintiffs' waste claims against Acadian, Marathon, and Vanguard must be dismissed because they are not officers, directors, or trustees of the Funds.  Waste claims are traditionally brought against corporate directors.  *See* 1 Edward P. Welch *et al.*, *Folk on the Delaware General Corporation Law* § 141.2.13 (5th ed. 2006) ("The duty of directors . . . includes a settled prohibition against waste of corporate assets."); *see also Ahalon Precision Mfg. Corp.* v. *Flair Int'l Corp.*, 796 N.Y.S.2d 171, 172 (N.Y. App. Div. 2005) (waste claim brought under New York law dismissed against defendants because they were not directors or officers).

Plaintiff's assertion that the investments at issue were criminal. (*See supra* Section III.B.1.)

Moreover, there are no plausible allegations that Acadian, Marathon, or Vanguard, which are

organized or have their principal places of business in Delaware, Massachusetts, the United

Kingdom, and Pennsylvania, respectively (Am. Compl. ¶¶ 37, 50-51), are subject to the New

York Penal Law or to an unspecified purported law against profiting from unspecified

"wrongdoing."

**CONCLUSION**

Plaintiffs' third attempt to bring the same lawsuit verges on harassment.

Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety,

with prejudice.

Respectfully submitted,

OF COUNSEL:
Penny Shane
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Suite 700
Washington, DC 20006
Tel: (202) 956-7500

/s/ Donald J. Wolfe, Jr.
Donald J. Wolfe, Jr. (I.D. No. 285)
Brian C. Ralston (I.D. No. 3770)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000

*Attorneys for the Trustee Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, Joann Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson*

/s/ William M. Lafferty
_____
William M. Lafferty (#2755)
Bradley D. Sorrels (#5233)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE  19801
Tel:  (302) 658-9200

*Attorneys for Defendant The Vanguard Group, Inc.*

/s/ Peter B. Ladig
_____
Lewis H. Lazarus (#2374)
Peter B. Ladig (#3513)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
Tel:  (302) 888-6800

*Attorneys for Nominal Defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund*

OF COUNSEL:                          /s/ Samuel A. Nolen
Brandon F. White                     _____
Michael Licker                       Samuel A. Nolen (#971)
FOLEY HOAG LLP                       Susan M. Hannigan (#5342)
Seaport West                         RICHARDS, LAYTON & FINGER, P.A.
155 Seaport Boulevard                One Rodney Square
Boston, MA  02210                    920 North King Street
Tel:  (617) 832-1170                 Wilmington, DE  19801
                                     Tel:  (302) 651-7700

*Attorneys for Defendant Acadian Asset*       *Attorneys for Defendants Acadian Asset*
*Management LLC*                              *Management LLC and Marathon Asset Management,*
                                             *LLP*

-31-

## <u>Certificate of Service</u>

I hereby certify that on the 6th day of June, 2014, the foregoing Memorandum of

Law in Support of Defendants' Motion to Dismiss was served via ecf on all counsel of record.

*/s/ Brian C. Ralston*

Brian C. Ralston (I.D. No. 3770)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor
P.O. Box 951
Wilmington, DE  19899-0951
