# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

MARYLYNN HARTSEL and DEANNA PARKER, derivatively on behalf of Nominal Defendants,

    Plaintiffs,

v.

THE VANGUARD GROUP INC., JOHN J. BRENNAN, CHARLES D. ELLIS, RAJIV L. GUPTA, AMY GUTMANN, JOANN HEFFERNAN HEISEN, ANDRÉ F. PEROLD, ALFRED M. RANKIN, JR., and J. LAWRENCE WILSON; ACADIAN ASSET MANAGEMENT, LLC, and MARATHON ASSET MANAGEMENT, LLP,

    Defendants,
  and

VANGUARD INTERNATIONAL EQUITY INDEX FUNDS, d/b/a VANGUARD EUROPEAN STOCK INDEX FUND, and VANGUARD HORIZON FUNDS, d/b/a VANGUARD GLOBAL EQUITY FUND,

    Nominal Defendants.

Case No. 1:13-cv-01128-SLR

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

| | |
|---|---|
| OF COUNSEL: | Donald J. Wolfe, Jr. (I.D. No. 285) |
| Penny Shane | Brian C. Ralston (I.D. No. 3770) |
| SULLIVAN & CROMWELL LLP | POTTER ANDERSON & CORROON LLP |
| 125 Broad Street | 1313 N. Market Street |
| New York, NY 10004 | Hercules Plaza – 6th Floor, P.O. Box 951 |
| Tel: (212) 558-4000 | Wilmington, DE 19899-0951 |
| | Tel: (302) 984-6000 |
| Amanda F. Davidoff | |
| SULLIVAN & CROMWELL LLP | *Attorneys for the Trustee Defendants* |
| 1700 New York Avenue, NW, Suite 700 | *John J. Brennan, Charles D. Ellis, Rajiv L. Gupta,* |
| Washington, DC 20006 | *Amy Gutmann, Joann Heffernan Heisen, André F.* |
| Tel: (202) 956-7500 | *Perold, Alfred M. Rankin, Jr., and J. Lawrence* |
| | *Wilson* |

|  |  |
|---|---|
|  | William M. Lafferty (#2755)<br>Bradley D. Sorrels (#5233)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE  19801<br>Tel:  (302) 658-9200<br><br>*Attorneys for Defendant The Vanguard Group, Inc.*<br><br>Lewis H. Lazarus (#2374)<br>Peter B. Ladig (#3513)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>P.O. Box 2306<br>Wilmington, DE  19899-2306<br>Tel:  (302) 888-6800<br><br>*Attorneys for Nominal Defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund* |
| OF COUNSEL:<br><br>Brandon White<br>Michael Licker<br>FOLEY HOAG LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA  02210<br>Tel:  (617) 832-1170<br><br>*Attorneys for Defendant Acadian Asset Management LLC* | Samuel A. Nolen (#971)<br>Susan M. Hannigan (#5342)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801<br>Tel:  (302) 651-7700<br><br>*Attorneys for Defendants Acadian Asset Management LLC and Marathon Asset Management, LLP* |

Dated:  August 26, 2014

-i-

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

I.   PLAINTIFFS FAILED TO ADEQUATELY PLEAD THAT THE NEW BOARD
     WRONGFULLY REFUSED THEIR DEMAND. ........................................................2

     A.   Collateral Estoppel Bars Plaintiffs' Assertion That the Board's
          Composition Resulted in Wrongful Refusal of Their Demand. ..............2

     B.   Plaintiffs Have Waived Any Argument Concerning the New Board's
          Supposed Conflicts of Interest. ................................................................3

     C.   A Majority of the Trustees Are Not "Interested Persons" and Thus Are
          Not Conflicted. ........................................................................................4

     D.   The New Board's Reservation of Final Decision-Making Authority Is
          Commonplace and Does Not Suggest Bad Faith. ....................................4

II.  FAR FROM "ABDICATING" ITS RESPONSIBILITY, THE NEW BOARD
     RESPONDED DILIGENTLY TO PLAINTIFFS' DEMAND. .....................................5

III. DEFENDANTS DID NOT WAIVE THE DEMAND REQUIREMENTS IN THE
     DECLARATIONS OF TRUST. ...................................................................................6

IV.  THE FUNDS DID NOT VIOLATE 18 U.S.C. § 1955. .................................................8

V.   PLAINTIFFS' CLAIMS ARE TIME BARRED. ........................................................10

CONCLUSION ..................................................................................................................10

## **TABLE OF AUTHORITIES**

                                                                                                                   **Page(s)**

**Cases**

*Aronson* v. *Lewis*,
    473 A.2d 805 (Del. 1984) ..................................................................................................6

*Belendiuk* v. *Carrion*,
    2014 WL 3589500 (Del. Ch. July 22, 2014)......................................................................6

*Boeing* v. *Shrontz*,
    1994 WL 30542 (Del. Ch. Jan. 19, 1994)......................................................................4, 5

*Boland* v. *Boland*,
    31 A.3d 529 (Md. 2011) ....................................................................................................3

*Charal Inv. Co.* v. *Rockefeller*,
    1995 WL 684869 (Del. Ch. Nov. 7, 1995) .......................................................................6

*Clackamas Gastroenterology Associates, P.C.* v. *Wells*,
    538 U.S. 440 (2003)...........................................................................................................8

*Cramer* v. *Gen. Tel. & Electronics Corp.*,
    582 F.2d 259 (3d Cir. 1978)...............................................................................................7

*Dole Food Co.* v. *Patrickson*,
    538 U.S. 468 (2003)...........................................................................................................9

*Gamoran* v. *Neuberger Berman, LLC*,
    2012 WL 2148217 (S.D.N.Y. June 12, 2012) ..................................................................6

*Grimes* v. *Donald*,
    673 A.2d 1207 (Del. 1996) ................................................................................................5

*Hartsel* v. *The Vanguard Group*,
    2011 WL 2421003 (Del. Ch. June 15, 2011)……………………………………...1, 3, 4, 10

*Jam Transportation Inc.* v. *Harleysville Mutual Insurance Company*,
    937 F. Supp. 2d 532 (D. Del. 2013)...................................................................................7

*Janssen* v. *Best & Flanagan*,
    662 N.W.2d 876 (Minn. 2003)..........................................................................................4,

*Levine* v. *Smith,*
    591 A.2d 194 (Del. 1991) ..................................................................................................5

*Louisiana Muni. Police Empl. Retir. Sys.* v. *Pyott*,
    46 A.3d 313 (Del. Ch. 2012)..................................................................................................3

*Malpiede* v. *Townson*,
    780 A.2d 1075 (Del. 1999) ..................................................................................................10

*Mitsubishi Motors Corp.* v. *Soler Chyrsler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..............................................................................................................8

*Paramount Commc'ns Inc.* v. *Time Inc.*,
    1989 WL 79880 (Del. Ch. July 14, 1989).............................................................................9

*Pittsburgh* v. *W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)..................................................................................................7

*Rich ex rel. Fuqi International, Inc.* v. *Yu Kwai Chong*,
    66 A.3d 963 (Del. Ch. 2013).................................................................................................5

*Sanabria* v. *United States*,
    437 U.S. 54 (1978)................................................................................................................9

*Scattered Corp.* v. *Chicago Stock Exch. Inc.*,
    1996 WL 417507 (Del. Ch. July 12, 1996)...........................................................................4

*Scattered Corp.* v. *Chicago Stock Exchange*,
    701 A.2d 70 (Del. 1997) .......................................................................................................3

*Seidl* v. *American Century Companies, Inc.*,
    2012 WL 7986873 (W.D. Mo. Oct. 31, 2012)......................................................................3

*Smith* v. *Sperlin*,
    354 U.S. 91 (1957)..............................................................................................................10

*Swanson* v. *Traer*,
    354 U.S. 114 (1957)............................................................................................................10

*United Housing Found., Inc.* v. *Forman*,
    421 U.S. 837 (1975)..............................................................................................................9

*United States* v. *Granderson*,
    511 U.S. 39 (1994)................................................................................................................9

*United States* v. *Lanier*,
    520 U.S. 259 (1997)..............................................................................................................9

*United States* v. *Merrell*,
    701 F.2d 53 (6th Cir. 1983) ..................................................................................................9

**Statutes, Rules, and Regulations**

15 U.S.C. § 80a-2(a)(19)..................................................................................................4

18 U.S.C. § 1955.................................................................................................2, 8, 9, 10

18 U.S.C. § 1962.................................................................................................................9

10 *Del. C.* § 8118(a).......................................................................................................10

12 *Del. C.* § 3801(d) ........................................................................................................4

12 *Del. C.* § 3816(e)......................................................................................................7, 8

12 *Del. C.* § 3825(a)..........................................................................................................8

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................................8, 10

Fed. R. Civ. P. Rule 23.1(b)................................................................................................7

**Other Authorities**

1 Fletcher Cyclopedia of Law of Corporations § 31
    (rev. ed. 2014)…………………………………………………………………….9

H.R. Rep. No. 91-1549 (1970)............................................................................................8

**INTRODUCTION**

This case is an attempt to relitigate an argument previously rejected by the Delaware Supreme Court: that Vanguard's trustees allegedly face "irreconcilable conflicts" because they sit on the boards of multiple Vanguard funds and on the board of The Vanguard Group, Inc. In *Hartsel* v. *The Vanguard Group*, the Court of Chancery and then the Delaware Supreme Court rejected Plaintiffs' argument that this board structure rendered a demand futile. 2011 WL 2421003 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012). Here, Plaintiffs wrongly argue that the same board structure made all board members incapable of considering a demand.

As an initial matter, Delaware law is clear that, by making a demand, Plaintiffs have conceded the independence of the New Board[1] for purposes of responding to the demand. Plaintiffs cannot dispute the applicability of that principle here given the rulings in *Hartsel* that a demand upon the New Board with respect to these same contentions was not excused due to alleged conflicts of interest. Moreover, Plaintiffs' theory is contradicted by their complaint, which reflects that the New Board fully addressed the demand through an investigation by an independent committee composed of non-Defendant directors (the "Committee") and its outside counsel. Other than erroneously complaining that they should have been allowed to participate, Plaintiffs take no issue with the reasonableness of that investigation. (*See* Opp. at 14-18.)

Plaintiffs' answering submission does not adequately rebut, and in some instances does not even address, the multiple independent grounds for dismissal set forth in Defendants' opening brief. *First*, Plaintiffs fail to adequately plead their claim that the New Board wrongfully refused Plaintiffs' demand, given that the Delaware courts have already concluded that board members are not conflicted by their positions on multiple boards—and because Plaintiffs waived any challenge to the New Board's independence. *Second*, Plaintiffs fall back

---

[1] Capitalized terms are defined as they were in Defendants' opening brief.

on a theory that the New Board's response to Plaintiffs' demand was not protected by the business judgment rule because the New Board "abdicated" its responsibility to respond, but this claim fails in light of Plaintiffs' allegations concerning the active investigation undertaken by the New Board.  *Third*, while Plaintiffs argue that the requirements for bringing a derivative suit set forth in the Funds' Declarations of Trust have been waived or are unenforceable, the Delaware Statutory Trust Act says the opposite, and courts enforce such requirements on motions to dismiss.  *Fourth*, Plaintiffs' insistence that the plain language of 18 U.S.C. § 1955 makes an investor a felon if he owns a single share of a gambling company traded on the London Stock Exchange is entirely unsupported by authority and ignores settled law that holders of publicly traded securities *do not* own the business of a public company.  *Fifth*, Delaware's Savings Statute applies only to matters of form, and Plaintiffs cite no authority to show that the prior dismissal with prejudice was such a matter.[2]  For all of these reasons, this action, the third in a series of three meritless litigations, should be finally dismissed with prejudice.

I.      **PLAINTIFFS FAILED TO ADEQUATELY PLEAD THAT THE NEW BOARD WRONGFULLY REFUSED THEIR DEMAND.**

    A.      **Collateral Estoppel Bars Plaintiffs' Assertion That the Board's Composition Resulted in Wrongful Refusal of Their Demand.**

Plaintiffs' primary argument in support of their allegations that the New Board wrongfully refused their demand is that the New Board was not independent—and its actions were thus necessarily wrongful—because it "had an irreconcilable conflict of interest as a matter of law: the boards of the Nominal Defendants are identical to the board of the principal

---

[2] Plaintiffs have largely abandoned their claims against investment advisors Acadian, Marathon and Vanguard.  For example, Plaintiffs do not address, and have therefore waived their opposition to, Defendants' arguments that the investment advisors cannot be sued for waste (Brief at 29, n.6), and that no breach of contract claim against the advisors can be predicated on violation of the New York Penal Law, to which they are not subject (Brief at 29-30).

institutional defendant, Vanguard." (Opp. at 14-17.) As set forth in Defendants' opening brief, this argument is barred by collateral estoppel because the Delaware Court of Chancery expressly rejected it, dismissing the second *Hartsel* case with prejudice "because" the same "irreconcilable conflict" arguments failed to "cast reasonable doubt on the independence or disinterestedness" of the Trustees, a decision affirmed by the Delaware Supreme Court. *Hartsel*, 2011 WL 2421003, at *23-24, *aff'd* 38 A.3d 1254 (Del. 2012). Plaintiffs do not meaningfully respond to this collateral estoppel argument. (Opp. at 14-17.) This concession disposes entirely of Plaintiffs' argument that the New Board acted wrongfully in refusing Plaintiffs' demand.

**B.     Plaintiffs Have Waived Any Argument Concerning the New Board's Supposed Conflicts of Interest.**

Plaintiffs fail to rebut the settled rule that, independent of collateral estoppel, their demand waived any argument as a matter of law concerning the New Board's "irreconcilable conflicts of interest." (Opp. at 14-17.) Plaintiffs cite *Scattered Corp.* v. *Chicago Stock Exchange*, 701 A.2d 70 (Del. 1997), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000), but that case affirms that "the making of a demand waives . . . any contention that the board was incapable of acting on the demand," preserving only claims that the board failed to "*act*[] independently and in good faith or conduct[] a reasonable investigation" in responding to a demand. *Id.* at 71 (emphasis added). Plaintiffs' argument concerning the New Board's dual service is a claim that the board members were "incapable of acting on the demand," not a challenge to the sufficiency of their actions in response. *Id.*[3]

---

[3] *Louisiana Muni. Police Empl. Retir. Sys.* v. *Pyott*, 46 A.3d 313 (Del. Ch. 2012), *rev'd on other grounds*, 2013 WL 1364695 (Del. Apr. 4, 2013), is not instructive because it held that dismissal of one shareholder's derivative action did not preclude a derivative suit by another shareholder. *Id.* at 334-35. *Seidl* v. *American Century Companies, Inc.*, 2012 WL 7986873, at *8 (W.D. Mo. Oct. 31, 2012), was decided under Maryland law and erroneously applied dicta rather than the Maryland rule that a board's refusal may be challenged only on the basis that a board "did not act independently" in response to a demand. *Boland* v. *Boland*, 31 A.3d 529, 549-50 (Md. 2011).

### C. A Majority of the Trustees Are Not "Interested Persons" and Thus Are Not Conflicted.

Due to collateral estoppel and waiver, the merits of Plaintiffs' positional conflicts argument are not at issue. Nonetheless, the argument is baseless. The Delaware Statutory Trust Act ("DSTA") provides that an "independent trustee" is one "who is not an 'interested person' . . . of the statutory trust," as that term is defined under the Investment Company Act of 1940 (the "1940 Act"), 15 U.S.C. § 80a-2(a)(19), and that "[a]n independent trustee as defined [in the 1940 Act] shall be deemed to be independent and disinterested for all purposes," 12 *Del. C.* § 3801(d). The Court of Chancery found, and the Delaware Supreme Court affirmed, that a majority of the Trustees were not "interested persons" under the 1940 Act, and were therefore independent under Delaware law. *Hartsel*, 2011 WL 2421003, at *23-24.

### D. The New Board's Reservation of Final Decision-Making Authority Is Commonplace and Does Not Suggest Bad Faith.

Because Plaintiffs cannot allege, and are estopped from arguing, that the New Board was incapable of considering their demand, a committee of the Board was not required, and Plaintiffs' arguments concerning the scope of the Committee's authority (Opp. at 16) are irrelevant. Even were the Court to consider such arguments, Plaintiffs do not cast doubt on well-settled law that a board's reservation of final decision-making authority is common practice and does not suggest bad faith. *See*, *e.g.*, *Scattered Corp.* v. *Chicago Stock Exch. Inc.*, 1996 WL 417507, at *4 (Del. Ch. July 12, 1996); *Boeing* v. *Shrontz*, 1994 WL 30542, at *2 (Del. Ch. Jan. 19, 1994). Plaintiffs' reliance on *Janssen* v. *Best & Flanagan*, 662 N.W.2d 876, 884, fn. 3 (Minn. 2003), is unavailing, as that case considered whether the business judgment rule applied to the recommendation of a committee that, unlike here, was appointed by *interested* directors.[4]

---

[4] Plaintiffs also complain that the demand refusal was wrongful because the New Board did not provide Plaintiffs with a copy of the Committee's report. (Opp. at 18.) They are incorrect.

## II. FAR FROM "ABDICATING" ITS RESPONSIBILITY, THE NEW BOARD RESPONDED DILIGENTLY TO PLAINTIFFS' DEMAND.

Citing *Rich ex rel. Fuqi International, Inc.* v. *Yu Kwai Chong*, 66 A.3d 963 (Del. Ch. 2013), Plaintiffs argue that the Court should not apply the business judgment rule to the New Board's decision to refuse Plaintiffs' demand because the New Board "abdicated" its authority by unreasonably delaying its response. (Opp. at 13.) In *Rich*, the Court of Chancery reached this conclusion because the board committee investigating a demand became defunct; the investigation was defunded; no action on the investigation was taken over a twelve-month period; independent directors resigned in protest; and the investigation was ultimately abandoned entirely. *Id.* at 965-66, 979. In contrast, Plaintiffs here allege that the New Board formed the Committee to consider the demand, that the Committee retained a law firm to assist it in conducting an investigation, that the Committee issued a written report recommending refusal, and that the New Board considered and then "adopt[ed] the SLC's [sic] recommendation." (First Amended Verified Complaint ¶ 144(h).) This was nothing like *Rich*; it was a shouldering of responsibility, not an abdication.

Plaintiffs nevertheless argue that one year was too long for the New Board's investigation in light of the statutes of limitations Plaintiffs say apply. As explained in Defendants' opening brief (Br. at 19-21), those statutes of limitations expired before the New Board received Plaintiffs' demand. But even if Plaintiffs' claims were timely when filed (they were not), the period permitted for a board's investigation is not determined by how late during the limitations period

---

Derivative plaintiffs are not entitled to discovery to aid their pleadings, *Levine* v. *Smith,* 591 A.2d 194, 208-10 (Del. 1991) *overruled on other grounds Brehm*, 746 A.2d 244, and courts have explicitly held that refusal to provide an investigative report does not "evidence wrongful refusal of demand." *Boeing*, 1994 WL 30542, at *4. *Grimes* v. *Donald*, 673 A.2d 1207 (Del. 1996) *overruled on other grounds Brehm*, 746 A.2d 244, which is the only case on which Plaintiffs rely for this point, says nothing to the contrary.

a plaintiff chooses to make a demand. To the contrary, boards have a reasonable amount of time to respond to a demand, which "will vary in direct proportion to the complexity" of the issues presented. *Charal Inv. Co.* v. *Rockefeller*, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995).

Nor must a board enter into a tolling agreement to preserve potential claims raised in a belated or untimely demand. Plaintiffs rely on *Gamoran* v. *Neuberger Berman, LLC*, 2012 WL 2148217 (S.D.N.Y. June 12, 2012), for the opposite position, but the court there merely observed that entering a tolling agreement "undercut" accusations of delay—not that the absence of a tolling agreement suggests impropriety. *See id.* at *6. It does not. For example, in *Belendiuk* v. *Carrion*, 2014 WL 3589500, at *3, *6 (Del. Ch. July 22, 2014), the Court of Chancery held that a demand was not wrongfully refused, despite the demand committee's determination that a tolling agreement was unnecessary.[5] To the extent Plaintiffs' claims were timely at the time of the demand (they were not, *see infra* Section V), a tolling agreement was likewise unnecessary here; Plaintiffs brought their claims within the one-year limitations period they say applies.

### III.    DEFENDANTS DID NOT WAIVE THE DEMAND REQUIREMENTS IN THE DECLARATIONS OF TRUST.

Plaintiffs do not dispute that they failed to comply with the prerequisites set forth in the Funds' Declarations of Trust, which require the support of at least 10% of the Funds' shareholders in order to make a demand. (*See* Opp. at 18-19.) Instead, Plaintiffs argue that the Declarations of Trust limit only the ability to make a demand, not to bring a lawsuit—and that even if its requirements apply, they were waived and are unenforceable as contrary to public policy. (*Id.*) None of these arguments have merit.

---

[5] To the extent Plaintiffs argue (Opp. at 13-14), contrary to their allegations concerning the steps taken by the New Board, that the New Board failed to act entirely, they misread *Aronson* v. *Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds Brehm*, 746 A.2d 244. Under *Aronson*, a "conscious decision" not to act—here, the New Board's decision not to pursue a claim—receives deference under the business judgment rule. *Id.* at 813.

*First*, because the preconditions to demand in the Declarations of Trust limit the ability to serve a demand, they also necessarily limit the ability to bring a derivative lawsuit. Unless a plaintiff adequately alleges that demand would be futile, a derivative action can only go forward after the plaintiff makes a proper demand. *See Cramer* v. *Gen. Tel. & Electronics Corp.*, 582 F.2d 259, 275 (3d Cir. 1978); *see also* Fed. R. Civ. P. 23.1(b). Here, the making of a proper demand must comply with the preconditions in the Declarations of Trust, and a demand that does not satisfy those preconditions fails to comply with the demand requirement and, therefore, Rule 23.1. *See* 12 *Del. C.* § 3816(e). Any other standard would permit an end run around federal and Delaware law.

*Second*, there was no waiver of the limitations in the Declarations of Trust. The DSTA makes the "*right to bring a derivative action*" subject to any "additional standards and restrictions" in the governing instrument of the statutory trust. 12 *Del. C.* § 3816(e) (emphasis added). Here, those "additional standards" include proceeding on behalf of at least 10% of Fund shareholders (Ralston Exs. 9-10, Art. VIII, § 10(b)-(c)), which Plaintiffs do not allege they did. The case relied on by Plaintiffs, *Jam Transportation Inc.* v. *Harleysville Mutual Insurance Company*, 937 F. Supp. 2d 532 (D. Del. 2013), merely defines waiver as the "voluntary and intentional relinquishment of a known right." 937 F. Supp. 2d at 536. But there could be no waiver of a limit on Plaintiffs' ability to bring a derivative action until Plaintiffs filed their lawsuit. Far from waiving the limitations in the Declarations of Trust, Defendants responded with the instant motion to dismiss.[6]

---

[6] Plaintiffs' argument that the New Board waived the demand requirements in the Funds' Declarations of Trust relies on purported communications with the New Board, including an August 8, 2013 letter allegedly discussing the New Board's bases for refusing Plaintiffs' demand. (Opp. at 18.) Because the Amended Complaint contains no such allegations, this argument should be disregarded. *Pittsburgh* v. *W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (on a Rule 12(b)(6) motion to dismiss, courts consider the complaint, documents incorporated therein,

*Third*, public policy embraces, rather than undermines, the enforceability of prerequisites to derivative actions. The DSTA gives "maximum effect" to governing instruments generally, 12 *Del. C.* § 3825(a), and specifically approves of "additional standards and restrictions" as preconditions to a derivative claim, 12 *Del. C.* § 3816(e). *Mitsubishi Motors Corp.* v. *Soler Chyrsler-Plymouth, Inc.*, 473 U.S. 614 (1985), is not to the contrary. Rather, it notes only that contractual terms may be ignored when contrary to public policy, *id.* at 637 n.19, which is not the case here.

## IV. THE FUNDS DID NOT VIOLATE 18 U.S.C. § 1955.

Plaintiffs ask the Court to interpret 18 U.S.C. § 1955 to provide that any investor who purchased an overseas gambling company's stock on a public stock exchange is a felon. The statute's text makes that reading impossible, as does its legislative history—which reflects a purpose to impose criminal liability on "only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of a national concern …." H.R. Rep. No. 91-1549, at 21 (1970).

Citing *Clackamas Gastroenterology Associates, P.C.* v. *Wells*, 538 U.S. 440 (2003), Plaintiffs contend that the "ordinary meaning" of the term "owned" compels the conclusion that § 1955 reaches passive shareholders. (Opp. at 20.) In *Clackamas*, the Supreme Court concluded that a closely held medical clinic was "own[ed]" by its four physician-shareholders who were "actively engaged in medical practice as shareholders and directors" of the clinic. 538 U.S. at 442. As the Supreme Court has recognized, however, shareholders of publicly held corporations (such as those at issue here) are different. "An individual shareholder, by virtue of his ownership of shares, does not own the corporations' assets…." *Dole Food Co.* v. *Patrickson*, 538 U.S. 468,

---

and matters of public record). In any event, the reasons for refusing Plaintiffs' demand are not relevant to the purported waiver of the prerequisites to Plaintiffs' lawsuit.

475 (2003); *see also* 1 Fletcher Cyclopedia of Law of Corporations § 31 (rev. ed. 2014).  Nor does an individual shareholder control the corporation, a role that is left to the corporation's managers.  *Paramount Commc'ns Inc.* v. *Time Inc.*, 1989 WL 79880, at *30 (Del. Ch. July 14, 1989) ("[D]irectors, not shareholders, are charged with the duty to manage the firm.").

Plaintiffs' argument that § 1955 provides "no exception for 'passive' owners" is a straw man.  (Opp. at 21-22.)  The issue here is whether § 1955 applies to passive minority shareholders in publicly traded companies.  (Brief at 21-23.)  It does not.  Citing *Sanabria* v. *United States*, 437 U.S. 54, 70 n.26 (1978), and *United States* v. *Merrell*, 701 F.2d 53, 54-55 (6th Cir. 1983), Plaintiffs argue that § 1955 "proscribes any degree of participation in an illegal gambling business," reaching "high level bosses and street level employees" such as janitors and waiters.  (Opp. at 21.)  These decisions prove Defendants' point.  Janitors and waiters may fall within the scope of § 1955 because a person in those roles "performs an[ ] act, duty or function which is necessary or *helpful* in operating the enterprise."  *Merrell*, 701 F.2d at 55.  They have some "degree of participation."  *Sanabria*, 437 U.S. at 70 n.26.  In contrast, passive shareholders in a publicly traded company do not participate in the operation of a company and have no direct relationship with it.  *See United Housing Found., Inc.* v. *Forman*, 421 U.S. 837, 852 (1975).[7]

When Congress intends to criminalize investments in securities, it says so explicitly.  *See*, *e.g.*, 18 U.S.C. § 1962 (outlawing investment of racketeering income through a "purchase of securities on the open market for purposes of investment").  Plaintiffs cannot point to any legislative history, regulatory guidance, court decision, enforcement action or other authority to

---

[7] To the extent § 1955 is found to be ambiguous (it is not), that ambiguity must be resolved in favor of the narrower construction under the rule of lenity.  *United States* v. *Granderson*, 511 U.S. 39, 54 (1994).  Further, this court would likely be barred from finding that the Funds' ownership of shares in gambling companies was illegal under § 1955 because due process bars courts from applying novel constructions of criminal statutes to conduct not clearly within the statutes' scope.  *United States* v. *Lanier*, 520 U.S. 259, 265-66 (1997).

substantiate their position that Congress intended to criminalize passive minority investment in public gambling companies. All relevant authority instructs otherwise. Indeed, when the parties presented precisely this issue to the Delaware Court of Chancery, Vice Chancellor Parsons commented (without deciding) that he was "not convinced" that passive investment could violate § 1955. *Hartsel*, 2011 WL 2421003, at *25.[8]

## V.   PLAINTIFFS' CLAIMS ARE TIME BARRED.

Plaintiffs cite no authority for their contention that the prior litigations were dismissed for "matters of form" and should thus benefit from Delaware's Savings Statute. (Opp. at 30.) Nor do they identify any authority for the proposition that, even if the Savings Statute applies, they can bring an otherwise time-barred contract claim for the first time in this action. (Opp. at 30, n.15.) They cannot. The Savings Statute applies only to "the same cause[s] of action," which does not include Plaintiffs' newly asserted breach of contract claim. 10 *Del. C.* § 8118(a).[9]

## CONCLUSION

Plaintiffs have not adequately pled wrongful demand refusal or an abdication of responsibility by the New Board—or even that their demand was proper, identified any illegality, or was followed by a timely lawsuit. Accordingly, Defendants respectfully ask the Court to dismiss this lawsuit in its entirety, with prejudice.

---

[8] Even if there were some illegality unknown to anyone other than Plaintiffs in this case (there is not), because of the exculpatory clauses found in the Declarations of Trust, this could not provide the basis for a claim. (Br. at 25.) Plaintiffs argue that this defense is not properly heard on a Rule 12(b)(6) motion. (Opp. at 29.) Plaintiffs' authority for this argument, *Malpiede* v. *Townson*, 780 A.2d 1075 (Del. 1999), in fact observes that a defense based on language in Declarations of Trust "may be raised on a Rule 12(b)(6) motion to dismiss (with or without the filing of an answer) …." *Id.* at 1092-94. The Supreme Court of Delaware held in *Malpiede* that the court below properly granted defendant's motion to dismiss based on exculpatory provisions. *Id.* at 1095-96.

[9] On further consideration, Defendants withdraw their argument that subject matter jurisdiction has not been adequately pled. *See Smith* v. *Sperlin*, 354 U.S. 91, 97 (1957); *Swanson* v. *Traer*, 354 U.S. 114, 117 (1957).

Respectfully submitted,

| OF COUNSEL: | */s/ Donald J. Wolfe, Jr.* |

Donald J. Wolfe, Jr. (I.D. No. 285)
Brian C. Ralston (I.D. No. 3770)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor, P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000

Penny Shane
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Suite 700
Washington, DC 20006
Tel: (202) 956-7500

*Attorneys for the Trustee Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, Joann Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson*

*/s/ William M. Lafferty*
William M. Lafferty (#2755)
Bradley D. Sorrels (#5233)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19801
Tel: (302) 658-9200

*Attorneys for Defendant The Vanguard Group, Inc.*

*/s/ Lewis H. Lazarus*
Lewis H. Lazarus (#2374)
Peter B. Ladig (#3513)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Tel: (302) 888-6800

*Attorneys for Nominal Defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund*

| | |
|---|---|
| OF COUNSEL: | */s/ Samuel A. Nolen* |
| | Samuel A. Nolen (#971) |
| Brandon White | Susan M. Hannigan (#5342) |
| Michael Licker | RICHARDS, LAYTON & FINGER, P.A. |
| FOLEY HOAG LLP | One Rodney Square |
| Seaport West | 920 North King Street |
| 155 Seaport Boulevard | Wilmington, DE  19801 |
| Boston, MA  02210 | Tel:  (302) 651-7700 |
| Tel:  (617) 832-1170 | |
| | *Attorneys for Defendants Acadian Asset* |
| *Attorneys for Defendant Acadian Asset* | *Management LLC and Marathon Asset Management,* |
| *Management LLC* | *LLP* |

Dated:  August 26, 2014
1163894

**Certificate of Service**

I hereby certify that on the 26th day of August, 2014, the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss was served via ECF on all counsel of record.

/s/ Brian C. Ralston
Brian C. Ralston (I.D. No. 3770)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza – 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951