IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARYLYNN HARTSEL and DEANNA PARKER, derivatively on behalf of Nominal Defendants, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE VANGUARD GROUP INC., JOHN )<br>J. BRENNAN, CHARLES D. ELLIS, )<br>RAJIV L. GUPTA, AMY GUTMANN, )<br>JOANN HEFFERNAN HEISEN, )<br>ANDRE F. PEROLD, ALFRED M. )<br>RANKIN, JR., and J. LAWRENCE )<br>WILSON; ACADIAN ASSET )<br>MANAGEMENT, LLC, and MARATHON )<br>ASSET MANAGEMENT, LLP, )<br>)<br>Defendants, )<br>)<br>and, )<br>)<br>VANGUARD INTERNATIONAL EQUITY )<br>INDEX FUNDS, d/b/a VANGUARD )<br>EUROPEAN STOCK INDEX FUND, )<br>and VANGUARD HORIZON FUNDS, )<br>d/b/a VANGUARD GLOBAL EQUITY )<br>FUND, )<br>)<br>Nominal Defendants. ) | Civ. No. 13-1128-SLR |

---

Ian Connor Bifferato, Esquire and Thomas F. Driscoll, III, Esquire of Bifferato LLC, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Thomas I. Sheridan, III, Esquire of Simmons Hanly Conroy.

Donald J. Wolfe, Jr., Esquire and Brian C. Ralston, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Trustee Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, Joann Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson.

William M. Lafferty, Esquire and Bradley D. Sorrels Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant The Vanguard Group, Inc.

Lewis H. Lazarus, Esquire, Peter B. Ladig, Esquire, and Katherine J. Neikirk, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Nominal Defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund.

Samuel A. Nolen, Esquire and Susan M. Hannigan, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendants Acadian Asset Management LLC and Marathon Asset Management, LLP.

---

**MEMORANDUM OPINION**

Dated: January ＿, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On June 24, 2013, plaintiffs Marylynn Hartsel ("Hartsel") and Deanna Parker ("Parker") (collectively, "plaintiffs") filed this derivative action against individual defendants John J. Brennan ("Brennan"), Charles D. Ellis ("Ellis"), Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson ("Wilson") (collectively, the "individual defendants"), as well as Acadian Asset Management, LLC ("Acadian"), Marathon Asset Management, LLP ("Marathon") and The Vanguard Group, Inc. ("Vanguard") (collectively, the "investor advisor defendants"). The nominal defendants are Vanguard International Equity Index Funds d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds d/b/a Vanguard Global Equity Fund (respectively, the "European Index Fund" and the "Global Equity Fund;" collectively, the "Funds") (collectively with the individual defendants and the investor advisor defendants, the "defendants"). Plaintiffs allege that defendants invested in illegal gambling companies in violation of fiduciary duties. Presently before the court is defendants' motion to dismiss. (D.I. 12) The court has jurisdiction pursuant to 28 U.S.C. § 1331, 1332, 1337, and 1367(a).

## II. BACKGROUND

### A. The Parties

Hartsel is a resident of Boca Raton, Florida and purchased shares in the Global Equity Fund on February 13, 2006. Hartsel still holds some of those shares. Parker was a resident of New York City, New York and currently resides in South Carolina. Parker purchased shares in the European Index Fund on or about May 20, 2005 and

still holds some of those shares. (D.I. 8 at ¶¶ 20-23, 140-141)

The Global Equity Fund and the European Index Fund are statutory trusts organized under the laws of the State of Delaware, with a principal place of business in Wayne, Pennsylvania. The Funds comprise several mutual fund "series" with each series offering a separate class of stock to investors. Each series represents a different portfolio of securities. Specifically, the Global Equity Fund offers the Global Fund, and the European Index Fund offers the European Fund. (D.I. 8 at ¶¶ 24-28) The Funds serve as "umbrella" entities and are registered as investment companies with the SEC. (Id. at ¶ 29) A single board of trustees ("the Board") serves all of the Funds. (Id. at ¶ 30)

Vanguard is an investment management company organized under the laws of the State of Pennsylvania, with a principal place of business in Malvern, Pennsylvania. Vanguard serves as investment advisor to dozens of investment companies, including the Funds. Vanguard provides the Funds with corporate management, administrative, marketing and distribution services. (Id. at ¶¶ 36-40) The individual defendants[1] were members of the Board (and other registered investment companies owned and controlled by Vanguard), as well as members of the board of directors of Vanguard during all relevant times. (Id. at ¶ 45) Brennan served as the Chairman of the Board and Chief Executive Officer of each of the Funds since at least 1987 and during all relevant times. (D.I. 8 at ¶ 48)

Acadian is organized under the laws of the State of Delaware and maintains its

---

[1]Brennan, Ellis and Wilson no longer serve on the Board. (D.I. 8 at ¶ 47)

2

principal place of business in Boston, Massachusetts. Acadian provides investment advisory services to the Global Fund, and during all relevant times, exercised managerial or operational oversight concerning the Global Fund's investments. (D.I. 8 at ¶ 50) Marathon is organized under the laws of the United Kingdom and maintains an office in Mt. Kisco, New York. Marathon provides investment advisory services to the Global Fund and exercised managerial or operational oversight concerning the Global Fund's investments since at least April 2006. (D.I. 8 at ¶ 51)

## B. Factual Allegations

Defendants purchased shares of certain internet gambling businesses for the Funds: (a) Sportingbet PLC ("Sportingbet"); (b) PartyGaming Plc ("PartyGaming"); (c) bwin Interactive Entertainment AG (formerly, BETandWIN.com Interactive Entertainment AG) ("Bwin"); and (d) NETeller Plc ("NETeller"). (D.I. 8 at ¶¶ 4, 67-71) Section 1955 of the Illegal Gambling Business Act makes it unlawful to own "all or part of an illegal gambling business." 18 U.S.C. § 1955. Plaintiffs allege that, by virtue of purchasing shares of PartyGaming, SportingBet, Bwin and NETeller – each "illegal gambling businesses" within the meaning of § 1955 – the Funds became part "owners" of an illegal gambling business in violation of § 1955.[2] (D.I. 8 at ¶¶ 4, 57, 87-107) After the passage of the Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361 et seq., which made it more difficult for existing illegal gambling businesses to

---

[2]A violation of § 1955 is a predicate crime under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961(1)(B). While plaintiffs allege that, as defendants caused the Funds "to purchase stock of illegal gambling businesses repeatedly within a ten-year period and over a significant period of time," there was a pattern of racketeering in violation of 18 U.S.C. § 1962(c), no related claims for relief are alleged. (D.I. 8 at ¶¶ 59, 168-88)

3

operate by making it unlawful to transfer funds to or from such entities, PartyGaming, Sportingbet, and Bwin withdrew from the U.S. market completely. (D.I. 8 at ¶¶ 113-15)

### C. Prior Litigation

Hartsel[3] first brought suit alleging RICO and other derivative and class claims under Delaware law on August 29, 2008. *McBrearty v. The Vanguard Group, Inc.*, 2009 WL 875220, at *1 (S.D.N.Y. Apr. 2, 2009). On April 2, 2009, the RICO claims were dismissed with prejudice, as causation was not established "[b]ecause intervening events, and not the defendants' investment decisions, proximately caused the plaintiffs' investment losses." *Id.* at *4. The judge declined to exercise supplemental jurisdiction over the state law claims, and the case was dismissed. *Id.* The Second Circuit affirmed on November 23, 2009, *McBrearty v. The Vanguard Group, Inc.*, 353 Fed. Appx. 640, 642 (2d Cir. 2009), and the U.S. Supreme Court denied certiorari on June 14, 2010, *McBrearty v. The Vanguard Group, Inc.*, 130 S. Ct. 3411 (2010).

Plaintiffs brought a second action against defendants in the Court of Chancery of the State of Delaware on April 7, 2010, alleging both derivative and direct claims based on the same conduct. Plaintiffs did not make a demand on the Board, arguing demand futility. The Court of Chancery dismissed the action with prejudice on June 15, 2011 for failure to adequately allege demand futility and for failure to allege cognizable claims on behalf of a class. *Hartsel v. The Vanguard Group, Inc.*, 2011 WL 2421003, at *28 (Del. Ch. June 15, 2011). The court found that plaintiffs "failed to articulate sufficient grounds based on the structure of the Vanguard [mutual fund] Complex for finding that

---

[3]Along with a co-plaintiff Deanna McBrearty.

4

a majority of [t]rustee [d]efendants lack independence under the [d]eclarations," and that the trustees did not face a substantial likelihood of liability arising from the alleged activity. *Id.* at *23, *26-27. The Delaware Supreme Court affirmed the Court of Chancery's ruling on January 19, 2012, *Hartsel v. The Vanguard Group, Inc.*, 38 A.3d 1254 (Table) (Del. 2012), and the United States Supreme Court denied certiorari on June 25, 2012, *Hartsel v. The Vanguard Group, Inc.*, 133 S. Ct. 32 (2012).

### D. Litigation at Bar

On July 25, 2012, plaintiffs made a demand on the Board, which appointed a committee on October 18, 2012 consisting of three Board members who are not defendants. (D.I. 8 at ¶ 144) On October 18, 2012, the Board appointed a special litigation committee ("the Committee") to review the demand, but reserved final decision making authority to themselves. On June 24, 2013, plaintiffs filed the case at bar as they allege that the claims would have been time barred after June 25, 2013. Plaintiffs allege that the Board and Committee purposefully postponed a decision with the intent of allowing the statute of limitations to expire. The Committee issued a report on July 17, 2013 recommending rejection of plaintiffs' demand. The Board rejected the demand thereafter. (*Id.*) Plaintiffs allege the following causes of action: (1) breach of fiduciary duty; (2) negligence; (3) waste; and (4) breach of contract against investment advisor defendants only. (*Id.* at ¶¶ 168-88)

## II. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

    The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims."

*United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Statute of Limitations

The Delaware Savings Statute ("Savings Statute"), 10 Del. C. § 8118(a),[4] "provides exceptions to the applicable statute of limitations in certain instances where the plaintiff has filed a timely lawsuit, but is procedurally barred from obtaining a resolution on the merits." *Reid v. Spazio*, 970 A.2d 176, 180 (Del. 2009). "The Savings Statute reflects a public policy preference for deciding cases on their merits" and "is to be construed by giving due consideration to notions of equity." *Id.* at 181. In *Hartsel*, the Court of Chancery of Delaware "found that the [c]omplaint [was] entirely derivative and that [p]laintiffs failed adequately to plead demand excusal . . . ." 2011 WL 2421003

---

[4]Providing:

> If in any action duly commenced within the time limited therefor in this chapter . . . if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form; . . . a new action may be commenced, for the same cause of action, at any time within 1 year after the abatement or other determination of the original action, or after the reversal of the judgment therein.

10 Del. C. § 8118(a).

7

at *28. After exhausting the appeals process, plaintiffs made such demand upon defendants. At issue in this case is whether plaintiffs may now invoke the Savings Statute to challenge the Board's refusal of the demand, by characterizing the dismissal of the previous case for failure to make a demand as dismissal for a "matter of form."

Lack of jurisdiction, improper venue and improper service of process are examples of "matters of form." *Savage v. Himes*, Civ. No. 09C-09-249, 2010 WL 2006573, at *2 (Del. Super. May 18, 2010), aff'd, 9 A.3d 476 (Del. 2010) (citing *Reid v. Siniscalchi*, 2008 WL 821535 (Del. Ch. 2008), rev'd on other grounds, 970 A.2d 176 (Del. 2009), and *O'Donnell v. Nixon Uniform Serv. Inc.*, Civ. No. 01C-10-291, 2003 WL 21203291 (Del. Super. 2003), aff'd sub nom. *O'Donnell v. Lilly*, 836 A.2d 514 (Del. 2003)). On the other hand, failure to prosecute or a deliberate failure to respond to a motion to dismiss are not "matters of form." *Savage* at *3; *O'Donnell*, 2003 WL 21203291, at *5. The Savings Statute "is not meant to be 'a refuge for careless and negligent counsel,' . . . and Delaware courts have not applied the Savings Statute when the action was dismissed based on a failure to prosecute, total neglect of the attorney, or mistaken strategic decisions by counsel." *Kaufman v. Nisky*, Civ. No. N11C04204, 2011 WL 7062500, at *3 (Del. Super. Dec. 20, 2011) (citations omitted).

In the case at bar, a motion to dismiss for failure to make a demand requires an application of "state substantive law to determine whether the facts demonstrate [that] demand would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007). The Delaware Supreme Court has explained that "the entire question of demand futility is inextricably bound to issues of business judgment and the

8

standard of that doctrine's applicability." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000). Whether to make a demand upon a corporation is a question of legal strategy and plaintiffs are constrained by such choices. Having chosen to argue demand futility on the facts, plaintiffs cannot now characterize the analysis of such a decision as a "matter of form" in order to proceed.[5] The Savings Statute does not apply to the circumstances at bar and plaintiffs' action is dismissed as time barred.[6]

## B. Plaintiffs' Demand

Alternatively, a board's refusal to pursue a shareholder's demand for litigation is reviewed under Delaware's business judgment rule. *Levine v. Smith*, 591 A.2d 194, 209 (1991); *Spiegel v. Buntrock*, 571 A.2d 767, 775–76 (Del. 1990); *Aronson*, 473 A.2d at 813. As described by the Delaware Supreme Court,

> [t]he business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. The burden is on the party challenging the decision to establish facts rebutting th[is] presumption. Thus, the business judgment rule operates as a judicial acknowledgement of a board of directors' managerial prerogatives.

*Spiegel*, 571 A.2d at 774 (citations omitted). "[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Id.* at 777. If a board's refusal satisfies the business judgment rule, courts will not

---

[5]The Delaware Savings Statute only allows a plaintiff to file a new suit for "the same cause[s] of action" that were previously filed. 10 Del. C. § 8118(a). Plaintiffs' new breach of contract cause of action is time barred for this additional reason.

[6]There is no dispute that plaintiffs invoke the Savings Statute to preserve the claims. (D.I. 18 at 4)

9

disturb its decision. *Id.* In considering the board's course of action, "[c]ourts do not measure, weigh or quantify directors' judgments." *Brehm*, 746 A.2d at 264. There is "no prescribed procedure that a board must follow" for investigating a shareholder demand. *Levine*, 591 A.2d at 214. However, failure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation. Such failure could constitute wrongful refusal. *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 75 (Del. 1997), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Plaintiffs argue that the Board abdicated authority to refuse the demand by deliberately failing to take action until after the expiration of the one-year savings statute (or entering into a tolling agreement). In response to plaintiffs' demand made July 25, 2012, the Board appointed a Committee on October 18, 2012 consisting of three Board members[7] to make a recommendation regarding the demand. The Board reserved final decision-making authority. Plaintiffs allege that neither the Board nor the Committee timely "responded to [p]laintiff[s'] litigation demand or confirmed that appropriate tolling agreements had been executed to save the claims from forfeiture." (D.I. 8 at ¶ 144(g)) After the Committee issued its report on July 17, 2013 recommending rejection of the demand, the Board adopted the recommendation and denied plaintiffs' demand. (*Id.* at ¶ 144)

Plaintiffs cite to *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963 (Del.

---

[7]F. Joseph Loughrey, Emerson U. Fullwood, and Mark Loughridge.

10

Ch. 2013), in support of their arguments. In *Rich*, the Court of Chancery found reasonable doubt that the board acted in good faith in investigating plaintiff's demand, when plaintiff alleged that:

> (1) he made a demand; (2) [defendant] took steps to begin an investigation; (3) that investigation appears to have uncovered some amount of corporate mismanagement; (4) [defendant] has not acted on the information uncovered; (5) the Special Committee appointed by the Board to investigate the demand became defunct before making a recommendation; (6) by de-funding the advisors to the Audit Committee, [defendant] has deliberately abandoned that investigation, and has taken no action through the Audit Committee for at least 12 months; and (7) the independent directors have left the company, some in protest of management's actions.

*Id*. at 979; *Aronson*, 473 A.2d at 813 ("not[ing] that the business judgment rule operates only in the context of director action, . . . it has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act."). In the case at bar, plaintiffs do not cite particularized facts to support a finding of unreasonable delay or "making a meaningful response to the demand unlikely if not impossible." *Rich*, 66 A.3d at 965.

The court declines to find that the mere passage of time, without more, is sufficient indicia of bad faith. Plaintiffs chose their litigation path, filed a lawsuit without making a demand, and waited until all appeals were final before making the demand mandated by the Court of Chancery. Unlike the plaintiffs in *Rich*, plaintiffs at bar have articulated no bad faith allegations but for the inferences that arguably could be drawn from the elapsed time between plaintiffs' demand and the Board's decision.

Plaintiffs also challenge the independence of the directors, arguing that the Board has an irreconcilable conflict of interest, as the Board of the nominal defendants

is identical to that of Vanguard. While "[i]It is not correct that a demand concedes independence 'conclusively' and in futuro for all purposes relevant to the demand," plaintiffs have offered no facts to support a finding that the Board has failed "to carry out its fiduciary duties in good faith or to conduct a reasonable investigation." *Scattered*, 701 A.2d at 74-75. Instead, plaintiffs recycle the "conflict of interest" arguments made to the Court of Chancery which, in a reasoned decision affirmed by the Supreme Court of Delaware, concluded that defendants were not interested. *Hartsel*, 2011 WL 2421003, at *21-28. This court will not revisit such arguments.

Plaintiffs argue that demand was wrongfully refused because the Board denied plaintiffs' request to participate in the Board's investigation, reserved "final decision-making authority" for itself, and did not provide plaintiffs a copy of its report. However, a board is not obligated to share investigation information and may retain authority to render a final decision. *See Gamoran v. Neuberger Berman, LLC*, Civ. No. 11-7957, 2013 WL 1286133, at *5-6 (S.D.N.Y. March 29, 2013), *aff'd Gamoran v. Neuberger Berman LLC*, 536 Fed. Appx. 155 (2d Cir. 2013) (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981), and *Scattered Corp.*, 701 A.2d at 77). Moreover, plaintiffs' conclusory arguments are not sufficient to justify discovery to assist them with their pleadings. *Levine*, 591 A.2d at 208-10. Plaintiffs have not demonstrated that the investigation was unreasonable or that the refusal of the demand was made in bad faith.[8]

---

[8]The court does not reach defendants' additional arguments that plaintiffs failed to satisfy the requirements set forth in the declarations, noting that defendants provided that the purported limitations did "not serve as a basis" for the Board's refusal of plaintiffs' demand. Nor does the court reach defendants' arguments regarding the

12

## IV. CONCLUSION

For the aforementioned reasons, the court concludes that plaintiffs' claims are time barred and alternatively that plaintiff has not established that the Board's refusal to pursue plaintiffs' demand for litigation violated Delaware's business judgment rule. Defendants' motion to dismiss is granted. An appropriate order shall issue.

---

failure to state a claim.

13